JOURNAL ENTRY AND OPINION
{¶ 1} J.H. appeals from the order of juvenile court that adjudicated him delinquent in connection with charges of aggravated robbery, kidnapping and three-year and one-year firearm specifications. For the reasons set forth below, we affirm.
 {¶ 2} On August 16, 2004, the Euclid Police Department filed a complaint against appellant alleging that he was delinquent for committing aggravated robbery upon Ricky Fleming and carrying a concealed weapon. On August 19, 2004, three additional complaints were filed alleging that appellant was delinquent in connection with the alleged incident involving Fleming. This complaint charged appellant with aggravated robbery with two firearm specifications, kidnapping with two firearm specifications, and carrying a concealed weapon. The charges from August 16, 2004, were subsequently dismissed and the matter proceeded to a hearing on the charges filed on the later date.
 {¶ 3} Ricky Fleming testified that he lives at the Water's Edge Apartments in Euclid. As he was exiting his apartment on or about August 16, 2004, he noticed appellant and another man in the elevator. The man with appellant went to a car and sat in the driver's seat as appellant stood near the car. Someone called Fleming over. Fleming approached and the driver pointed a gun at him and ordered him into the vehicle and instructed him to give him everything he had. As Fleming gave the driver money from his wallet, appellant stood next to the vehicle and told the driver that Fleming had more money. Fleming gave additional money to the driver and appellant continued to insist that Fleming had more money. After the driver ordered Fleming out of the car, Fleming called police, and reported that the assailants had fled in an older brown car with Wyoming license plates. Fleming later identified appellant from a photo array.
 {¶ 4} Euclid Police Officer Anthony Brentar testified that he learned of this incident during roll call, then stopped a car with Wyoming license plates a short time later. Officer Brentar testified that he smelled the odor of marijuana and asked the driver if there was anything in the vehicle that should not be there. The driver informed him that there was a gun in the glove box, directly in front of where appellant was seated. The weapon had one bullet in the chamber.
 {¶ 5} On cross-examination, Officer Brentar admitted that appellant did not own the vehicle and said nothing which would indicate an awareness that a gun was present.
 {¶ 6} Another officer on the scene[1] testified that open containers of alcohol were found in the car and a bag of marijuana was recovered between the two front seats.
 {¶ 7} Euclid Police Officer Scott Roller testified he test-fired the weapon recovered from the vehicle and determined that it was a semi-automatic and was operable.
 {¶ 8} Sgt. James Baird testified that he prepared a photo array in connection with this matter and Fleming identified appellant as one of the assailants. He further testified that he interviewed appellant who stated that he did not see a weapon, but believed that the driver was buying marijuana from Fleming.
 {¶ 9} Appellant elected to present evidence and testified that he knew that Fleming sold marijuana, so he and a friend, Justin Booker, went to Fleming's apartment. They eventually went out to Booker's car and Booker and Fleming sat inside the vehicle. Appellant stated that he did not see a weapon and did not witness the drug transaction. Fleming then got out of the car and appellant and Booker left the area. The next day, appellant and Booker were arrested while driving in the area. According to appellant, he did not see a weapon at any time, and did not know that it was in the glove box.
 {¶ 10} The trial court adjudicated appellant delinquent for aggravated robbery, kidnapping and the firearm specifications. It did not find him delinquent on the charge of carrying a concealed weapon. For its disposition, the court ordered appellant to be committed to the Ohio Department of Youth Services ("ODYS") for one year on the aggravated robbery charge and three years on the firearm specification, for a total of four years but not to exceed appellant's twenty-first birthday. Appellant now appeals and assigns five errors for our review.
 {¶ 11} Within his first assignment of error, appellant complains that the trial court erred in adjudicating him delinquent in connection with both aggravated robbery and kidnapping since they were allied offenses of similar import. He further asserts that the one-year and three-year firearm specifications attached to the aggravated robbery and kidnapping charges are also allied.
 {¶ 12} R.C. 2941.25 governs multiple counts and states:
 {¶ 13} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 14} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 15} Ohio appellate courts have held that R.C. 2941.25(A), which provides that an adult offender indicted on two or more allied offenses of similar import may be convicted of only one of the offenses, does not apply to juvenile delinquency matters. In In re Bowers, Ashtabula App. No. 2002-A-0010, 2002-Ohio-6913, citing In re: Skeens (Feb. 25, 1982), Franklin App. Nos. 81 AP-882, 81 AP-883; In re: Durham (Sept. 17, 1998), Franklin App. Nos. 97 APF12-1653, 97 APF12-1654; In re: Lugo (June 14, 1991), Wood App. No. WD-90-38.
 {¶ 16} In In re Skeens, supra, the court held:
 {¶ 17} "* * * R.C. 2941.25(A) does not apply to situations where a minor is alleged to be a delinquent minor since, under our Juvenile Code, such a minor is not charged with a crime. While the commission of acts which would constitute a crime if committed by an adult sets the machinery of the Juvenile Court in motion, the issue before the court is whether or not the minor has engaged in the kind of conduct that constitutes delinquency and will therefore justify the intervention of the state to assume his protection and custody. Evidence that the minor committed acts that would constitute a crime if committed by an adult is used only for the purpose of establishing that the minor is delinquent, not to convict him of a crime and to subject him to punishment for that crime." Accord In re Bower, supra; In re Durham, supra.
 {¶ 18} Further, with regard to the firearm specifications, this court has previously determined that R.C. 2929.71(A) is a sentencing provision and is not subject to the separate animus provision of R.C. 2941.25.State v. Loines (1984), 20 Ohio App.3d 69, 484 N.E.2d 727; State v.Price (1985), 24 Ohio App. 3d 186, 493 N.E.2d 1372; State v.Willingham (Feb. 16, 1988), Cuyahoga App. Nos. 54767 and 56464. A court may not impose both a one-year and a three-year firearm specification relative to the same felony, however. R.C. 2941.145(B); State v. Dixson,
Hamilton App. No. C-030227, 2004-Ohio-2575.
 {¶ 19} In any event, even assuming that this statute is applicable to juvenile proceedings, we note that in this matter the trial court ordered the disposition of commitment to the ODYS only as to the aggravated robbery offense and the three-year firearm specification. Thus, R.C.2941.25 was not contravened. Accord In re Durham, supra; In re Skeens,
supra; In re Lugo, supra.
 {¶ 20} The first assignment of error is without merit.
 {¶ 21} Appellant next contends, in his second assignment of error, that the delinquency adjudications are against the manifest weight of the evidence.
 {¶ 22} In a juvenile matter, a manifest weight claim is subject to the same standard of appellate review as in a criminal case. In re B.B.,
Cuyahoga App. No. 81948, 2003-Ohio-5920.
 {¶ 23} "In considering a manifest weight claim, a court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way, and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." In re J.K., Cuyahoga App. No. 82824, 2004-Ohio-1792, citing State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.
 {¶ 24} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. State v.Thompkins, supra, at 387, citing Tibbs v. Florida (1982), 457 U.S. 31, at 42, 72 L.Ed.2d 652, 102 S.Ct 2211.
 {¶ 25} In this matter, we cannot conclude that the trial court lost its way in adjudicating appellant delinquent. The evidence presented by the state indicated that Fleming was called out to the car, that the driver brandished a gun and ordered him inside the car while appellant stood outside the vehicle and repeatedly indicated that Fleming had more money. Appellant's version of events contained gaps in his perceptions at key intervals. We cannot conclude that the court clearly lost its way, and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 {¶ 26} The second assignment of error is without merit.
 {¶ 27} For his third assignment of error, appellant asserts that the trial court erred in adjudicating him delinquent in connection with the firearms specifications as the evidence established that appellant did not possess and display the weapon.
 {¶ 28} R.C. 2941.145 specifies, regarding firearm specifications, that "the offender had a firearm on or about the offender's person or underthe offender's control while committing the offense." (Emphasis added.)
 {¶ 29} In State v. Ridley, Franklin App. No. 03AP-1204, 2005-Ohio-333, the court stated:
 {¶ 30} "Constructive possession may * * * be achieved by means of an agent. [Citing State v. Hardy [(1978), 60 Ohio App.2d 325, 397 N.E.2d 773
and United States v. Clemis (C.A.6, 1993), 11 F.3d 597]. Moreover, we recognize that constructive possession of a weapon, even absent actual physical possession, may be established by a totality of evidence establishing an accomplice relationship between the physical possessor and his or her accomplice. State v. McConnell (Oct. 13, 1983), Cuyahoga App. No. 45294.
 {¶ 31} "From the testimony, it appears that, although co-defendant Day used the weapon to commit the robbery, appellant had knowledge of its presence. Appellant waited in the car, while Day robbed Thomas and Wynn. Appellant was in the car with Day when Officers Bodell and Morris pulled them over. While in the paddy wagon, both Day and appellant were in close proximity so that the gun was easily accessible to appellant. See Statev. Abrams (1974), 67 Ohio Op.2d 121, 322 N.E.2d 339, 342 (constructive possession of a gun by the co-defendant is a permissible inference)."
 {¶ 32} Similarly, in State v. Williams, Cuyahoga App. No. 85327, 2005-Ohio-3715, this court rejected the defendant's argument that the evidence was insufficient for a conviction on the firearm specifications because the defendant did not actually have the weapon where the evidence demonstrated that defendant aided and abetted the assailant who was in actual possession of the firearm.
 {¶ 33} In accordance with the foregoing, we conclude that there was sufficient evidence to establish the firearm specification in this matter. Although appellant was not in actual physical possession of the weapon, his accomplice had the weapon and used it during the criminal conduct in which appellant participated. Appellant accompanied the other man to the apartment. After Fleming was called to the vehicle, appellant stood immediately adjacent to the door (presumably blocking Fleming's escape). As Fleming complied with the other man's demand for money, appellant repeatedly insisted that Fleming still had additional money. From this evidence, viewed in the light most favorable to the State, a reasonable jury could conclude beyond a reasonable doubt that appellant was an accomplice of the other man who was in actual possession of the firearm.
 {¶ 34} This assignment of error is without merit.
 {¶ 35} Within his fourth assignment of error, appellant contends that R.C. 2152.17(F) violates the right to equal protection of the laws because it does not require the juvenile court to make findings before imposing a "maximum commitment for the firearm specification," i.e., three years.
 {¶ 36} R.C. 2152.17(F) provides:
 {¶ 37} "(F) If a child is adjudicated a delinquent child for committing two or more acts that would be felonies if committed by an adult and if the court entering the delinquent child adjudication orders the commitment of the child for two or more of those acts to the legal custody of the department of youth services for institutionalization in a secure facility pursuant to section 2152.13 or 2152.16 of the Revised Code, the court may order that all of the periods of commitment imposed under those sections for those acts be served consecutively in the legal custody of the department of youth services, provided that those periods of commitment shall be in addition to and commence immediately following the expiration of a period of commitment that the court imposes pursuant to division (A), (B), (C), or (D)(1) of this section. A court shall not commit a delinquent child to the legal custody of the department of youth services under this division for a period that exceeds the child's attainment of twenty-one years of age."
 {¶ 38} In In re R.L., Cuyahoga App. Nos. 84543, 84545 and 84546, 2005-Ohio-26, this court considered whether R.C. 2152.17(F) violates the right to equal protection because it fails to provide for the tripartite analysis required before imposing consecutive sentences upon adult offenders. This court subjected the provision to rational basis scrutiny and found no constitutional infirmity, noting:
 {¶ 39} "The objectives of the juvenile justice system differ from those of the adult criminal justice system. For adult offenders, the state's primary objective is to deter further criminal conduct and to punish the offender. R.C. 2929.11(A) provides:
 {¶ 40} "`The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender.'
 {¶ 41} "On the other hand, for the juvenile offender, the state's objectives focus on protection, development and rehabilitation. In this regard, R.C. 2152.01(A) provides:
 {¶ 42} "`The overriding purposes for dispositions under this chapter [R.C. Chapter 2152] are to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender.'"
 {¶ 43} Within that case, the appellant argued that the purposes of felony sentencing between the two groups of offenders have become less distinct in light of various statutory amendments which, the appellant claimed, evinced a legislative intent to treat juvenile and adult offenders similarly. In rejecting that argument, this court noted that the primary focus of the juvenile system remained on the development of the child.
 {¶ 44} Applying the reasoning of that case, and recognizing the rational basis discussed therein, we likewise conclude that R.C. 2152.17(F) does not violate the guarantee of equal protection for failing to require that the court make findings before imposing a maximum sentence.
 {¶ 45} For his fifth assignment of error, appellant asserts that he was denied effective assistance of counsel because his trial counsel failed to argue that the charges were allied offenses of similar import.
 {¶ 46} An analysis of a claim of ineffective assistance of counsel proceeds in accordance with the standards set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674:
 {¶ 47} First, "that counsel's performance was deficient" and, second, "that the deficient performance prejudiced the defense * * * so * * * as to deprive the defendant of a fair trial." Id.
 {¶ 48} In this matter, we have already determined that no prejudicial error occurred in connection with the claim of allied offenses. Accordingly, counsel was not ineffective. See State v. Henderson (1988),39 Ohio St.3d 24, 528 N.E.2d 1237.
 {¶ 49} This assignment of error is without merit.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, J., concurs.
McMonagle, J., concurs in Judgment Only.
[1] The record does not contain the identity of this witness but it is clear that he is a Euclid police officer who participated in the stop of the car in which appellant was riding.