[Cite as *State v. Vargas*, 2012-Ohio-2767.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97376**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## VERKO VARGAS

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-548241

**BEFORE:** Keough, J., Blackmon, A.J., and Jones, J.

**RELEASED AND JOURNALIZED:** June 21, 2012

**ATTORNEY FOR APPELLANT**

Christopher R. Fortunato
13363 Madison Avenue
Lakewood, OH 44107

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY: Edward D. Brydle
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant, Verko Vargas, appeals from the trial court's judgment, rendered after a jury trial, finding him guilty of drug trafficking and drug possession. Vargas contends that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence, and that he was denied his constitutional right to effective assistance of counsel. Finding no merit to the appeal, we affirm.

I. Facts and Procedural History

{¶2} Vargas was indicted on two counts of drug trafficking in violation of R.C. 2925.03 and one count of drug possession in violation of R.C. 2925.11. He pled not guilty and the case proceeded to a jury trial.

{¶3} The State called two witnesses at trial: Detectives Robert Martin and Benjamin McCulley of the Cleveland police department's 5th District Vice Unit. Detective Martin testified that the 5th District is a high drug-activity area and the Vice Unit focuses primarily on buy/bust drug operations to apprehend drug dealers. He described in detail what a buy/bust operation is and how it is conducted.

{¶4} He testified that on March 10, 2011, the Vice Unit was conducting a buy/bust operation at the Marathon gas station at the corner of East 140th Street and St. Clair Avenue in Cleveland. Detective Martin testified that the police have made many

drug-related arrests in this area. He said that sometimes the drug buys are made in the parking lot of the gas station, other times the sales start in the parking lot and move to the bus stop, sometimes the sellers bring the buyers to a bar on the other side of the street, and sometimes the sellers lead the buyers down the street to make the transaction.

{¶5} Detective Martin testified that the Vice Unit was using a confidential, reliable informant ("CRI") who had worked with the unit for the last year and a half for the buy/bust operation. Prior to the buy/bust operation, the CRI and his vehicle were searched at the police station to ensure that the CRI and the car were free of contraband. The only items the CRI kept on his person were his car keys and his cell phone. The police gave him a previously photocopied $20 bill to use as buy money.

{¶6} At approximately 10:30 p.m., the Vice Unit and the CRI went to the gas station. The CRI parked his car by the front doors of the station. Detectives Martin and Crayton, who were in separate cars, pulled into the parking lot and parked in different areas away from the CRI.

{¶7} According to Detective Martin, Vargas approached the CRI almost immediately. The CRI was on his cell phone pretending to talk to his girlfriend as Vargas approached. Detective Martin, who the CRI was actually talking to, heard Vargas say something to the CRI and then saw Vargas wave and walk away. The CRI then asked Detective Martin if he should follow Vargas, as he had requested, down the street toward East 144th Street and Coit Avenue. Detective Martin told the CRI it was okay to follow, as long as the CRI and the detective had a clear view of Vargas.

**{¶8}** The CRI drove out of the gas station parking lot and slowly followed Vargas, who was on foot, down the street. Detective Martin followed the CRI's car, and Detective Crayton followed behind. Detective Martin testified that he instructed Detective Crayton to continue to follow the CRI, and then he passed the CRI's vehicle, looped around a few streets, and parked on East 144th Street just west of Coit Avenue. As he waited there, Detective Crayton continually advised him and the detectives in the undercover, takedown cars where Vargas and CRI were.

**{¶9}** Detective Martin eventually saw Vargas turn the corner from Coit Avenue onto East 144th Street. The CRI parked his car at the corner, and Detective Martin then saw Vargas go to the driver's window of the CRI's car, lean in, and engage in conversation with the CRI. Detective Martin then saw Vargas enter a house on the corner of Coit Avenue and East 144th Street. While Vargas was in the house, Detective Martin instructed the CRI to turn his car around so the detective could see when the CRI tapped his brake lights, which was to be the signal that the transaction was completed.

**{¶10}** Detective Martin testified that shortly after entering the house, Vargas walked back out onto the street and over to the CRI's car. Detective Martin saw him lean into the car and, two to three seconds later, he saw the CRI's brake lights blink a few times, indicating that the sale was complete. Detective Martin then ordered the takedown cars to come in, and Vargas was taken into custody.

**{¶11}** Detective McCulley testified that he was in a takedown car for the March 10, 2011 buy/bust. He first positioned his car on Rugby Street, across the street from the

gas station and out of view of the CRI's vehicle. The radio broadcasts of what was happening indicated that the CRI was following the seller down Coit Avenue toward East 144th Street, so Detective McCulley repositioned his car around the corner. Detective McCulley stated that when Detective Martin ordered the takedown, it took him only ten seconds to get to the area of the buy, where he saw Vargas at the driver's door of the CRI's vehicle. Detective McCulley's partner jumped out of the car and arrested Vargas. Detective McCulley approached the CRI, who handed McCulley the rock of crack cocaine that Vargas had just sold him. The $20 buy money was not found on Vargas when he was arrested.

{¶12} The trial court denied defense counsel's Crim.R. 29(A) motion for acquittal at the close of the state's case, and the jury found Vargas guilty of all three counts. At sentencing, the trial court merged the offenses and sentenced Vargas on Count 1, drug trafficking, to seven months incarceration. This appeal followed.

## II. Analysis

A.    Ineffective Assistance of Counsel

{¶13} In his first assignment of error, Vargas argues that his trial counsel was ineffective for failing to file a motion to compel the identity of the informant and produce him for trial.

{¶14} To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that he was prejudiced by that performance. *State v. Drummond*, 111 Ohio St.3d 14,

2006-Ohio-5084, 854 N.E.2d 1038, ¶ 205, citing *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052. (1984). Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694. In evaluating a claim of ineffective assistance of counsel, a court must be mindful that there are countless ways for an attorney to provide effective assistance in a given case, and it must give great deference to counsel's performance. *Id.* at 689. Trial tactics and strategies do not constitute a denial of effective assistance of counsel. *State v. Gooden*, 8th Dist. No. 88174, 2007-Ohio-2371, ¶ 38, citing *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

{¶15} In this case, it is apparent that the informant's testimony would have only strengthened the state's case against Vargas. Thus, we find defense counsel's decision not to pursue the identity and testimony of the informant to be a strategic decision that does not constitute ineffective assistance of counsel. Furthermore, Vargas pointed to nothing to indicate how the result at trial would have been different if the informant had testified. Accordingly, he failed to demonstrate any prejudice resulting from counsel's trial strategy, the second prong of the test for ineffective assistance of counsel. Appellant's first assignment of error is therefore overruled.

B.     Sufficiency and Manifest Weight of the Evidence

{¶16} In his second, third, and fourth assignments of error, Vargas contends that the trial court erred in denying his Crim.R. 29(A) motion for acquittal, there was insufficient evidence to support his convictions, and his convictions were against the manifest weight of the evidence. We consider these assignments of error together because they are related.

{¶17} Crim.R. 29(A) provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 942 (1991), paragraph two of the syllabus.

{¶18} A manifest weight challenge, on the other hand, questions whether the prosecution met its burden of persuasion. *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 541 (1982). A reviewing court may reverse the judgment of conviction if it appears that the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. A finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *Id.* at 388.

**{¶19}** Vargas was convicted of drug trafficking in violation of R.C. 2925.03(A)(1) and (2), which provide that no person shall "knowingly sell or offer to sell a controlled substance," or "prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person." He was also convicted of drug possession in violation of R.C. 2925.11(A), which provides that no person shall "knowingly obtain, possess, or use a controlled substance."

**{¶20}** Vargas argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence because there was no evidence to demonstrate that he acted knowingly. Citing *State v. McKoy*, 8th Dist. No. 93363, 2010-Ohio-522, he contends that only the CRI could testify to what transpired between him and the CRI, and without the CRI's testimony, there was no evidence to satisfy the "knowingly" element of the offenses.

**{¶21}** But *McKoy* is easily distinguishable from this case. In *McKoy*, the only witness to the alleged drug transaction was the state's unidentified witness. Accordingly, this court held that disclosure of the informant's identity and the information he would provide were essential to McKoy's defense, and that the trial court properly ordered the state to disclose the identity of the CI.

**{¶22}** But here, there was a witness to the entire transaction. Detective Martin testified that he saw Vargas approach the CRI as he was sitting in his car at the gas

station. He overheard a brief conversation between Vargas and the CRI and saw Vargas wave the CRI down the street. When they were down the street, Detective Martin saw Vargas again approach the CRI's car, lean in, and engage in a conversation. Detective Martin then saw Vargas enter a house and, a short time later, come out of the house and go back to the driver's side of the CRI's car. Seconds later, Detective Martin saw the brake lights on the CRI's car blink a few times, the agreed-upon signal that the transaction was complete. In addition, Detective McCulley testifed that Vargas was apprehended ten seconds after the takedown command was issued as he was standing by the driver's side door of the CRI's car. Detective McCulley testified further that although no money was found on Vargas's person, the CRI gave the detective the rock of crack cocaine that Vargas had just sold him.

{¶23} "A person acts knowingly when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Here, the testimony of Detectives Martin and McCulley established all of the elements of the drug trafficking and drug possession offenses, including that Vargas acted knowingly, beyond a reasonable doubt. Accordingly, the jury did not lose its way or create a manifest miscarriage of justice in convicting Vargas of drug trafficking and drug possession.

{¶24} Vargas's convictions are supported by the manifest weight of the evidence; hence, they are also supported by sufficient evidence, and the trial court did not err in

denying defense counsel's Crim.R. 29(A) motion for acquittal. Appellant's second, third, and fourth assignments of error are therefore overruled.

**{¶25}** Affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

PATRICIA A. BLACKMON, A.J., and
LARRY A. JONES, SR., J., CONCUR