[Cite as *State v. Howard*, 2012-Ohio-3459.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97695**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# ANDRE HOWARD, JR.

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-554036

**BEFORE:**   S. Gallagher, J., Boyle, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:**   August 2, 2012

**ATTORNEY FOR APPELLANT**

Brooke Deines
Law Offices of Brooke Deines, LLC
P.O. Box 91426
Cleveland, OH   44101


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By: Sanjeev Bhasker
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH   44113

SEAN C. GALLAGHER, J.:

{¶1} Appellant, Andre Howard, Jr., appeals his conviction entered in the underlying action. For the reasons stated herein, we affirm.

{¶2} Appellant was charged under a multi-count indictment in connection with a drive-by shooting that occurred on June 13, 2011. He was charged with four counts of felonious assault and two counts of improperly discharging a weapon into a habitation, all with one-, three-, and five-year firearm specifications, along with one count of having weapons while under disability. The state claimed that appellant aided and abetted in the crimes by being the driver of the vehicle and the principal conspirator.

{¶3} Appellant pled not guilty to the charges, and the case proceeded to a bench trial where the following evidence was presented: Appellant is the ex-boyfriend of Madelyn Jenkins. On June 12, 2011, Dorian Jenkins, who is Madelyn's cousin, called appellant because she "wanted to smoke," and she asked appellant to meet her at a house located at East 141st Street and Shaw Avenue in East Cleveland. When Dorian arrived at the location, Madelyn was there with her current boyfriend. Madelyn became upset when Dorian told her that appellant would be arriving. Appellant arrived, driving a rusted, gray-colored Delta with three passengers. According to Dorian, Madelyn and appellant engaged in a verbal argument, after which appellant "sped off."

{¶4} Dorian called Michael Jenkins out of fear of appellant retaliating. Michael Jenkins is Madelyn's father. Madelyn and Dorian and several others then went to Michael Jenkins's house at East 84th Street and Wade Park Avenue in Cleveland. On the way, Dorian answered a call from appellant. Dorian testified that appellant asked where they were heading. She told him a false location, but he responded by stating, "You are on your way to East 84th."

{¶5} After Madelyn and Dorian arrived at East 84th Street and informed Michael Jenkins about the situation, appellant drove his gray Delta down the street. The same vehicle passed the house four times. The first three times, there were four people in the vehicle. During one of the trips, appellant stopped the car at a nearby stop sign and yelled, "I'm coming right back." The fourth time, the vehicle passed slowly. Appellant was identified as driving the vehicle with one other person in the car. Two bikes followed behind the car down the street. Shots were fired, and the car sped off. Dorian testified the two men on the bikes and the person in the back seat of the gray Delta were shooting.

{¶6} Madelyn, Dorian, Michael, and William Jenkins were outside when the shooting occurred, and bullets were shot in their direction. William Jenkins was hit in the head by a bullet and was taken to the hospital. Although William could not state who was driving the vehicle, he had seen appellant driving the vehicle earlier that day, and he told the hospital that appellant was involved in the incident. He also told the police that someone was shooting from the bushes.

**{¶7}** Michael Jenkins testified that earlier in the day on June 12, 2011, appellant drove to his East 84th Street house and they discussed appellant's abusive relationship toward Madelyn. Michael testified that appellant was driving the vehicle involved in the shooting and that gunshots came from the car and the bikes that followed. He testified that bullets entered two of his neighbors' houses. Michael also testified that he saw appellant drive by in his gray Delta the next day and appellant made a gun gesture with his hand. Michael then called the police. Michael conceded that he initially told the police the car involved in the shooting was a brown Delta. However, he testified it was dark out and the car was rusted. When he saw the car the following day, he realized that it was a rusted, gray car.

**{¶8}** Delrico Howard is appellant's cousin. He testified that on the afternoon of June 13, 2011, appellant picked him up at a bus station. Appellant told Delrico that "a situation had happened." The police later pulled them over, and the two were arrested.

**{¶9}** Appellant testified that he had dated Madelyn for nine months, that their relationship was based on violence, and that they had only been "broken up" for two weeks. He admitted that earlier in the day on June 12, 2011, he had driven by the East 84th Street house and spoken to Madelyn's father. He testified that later he went to meet Dorian at East 141st Street and Shaw Avenue. He admitted he drove a 1988 gray-colored Delta and that three other males were in his car. He claimed that Dorian invited him to the East 84th Street house to fight.

{¶10} Appellant admitted driving by the East 84th Street house with three other males in his car. He denied anyone having a gun or being involved in a shooting. He stated he only drove by once, that nobody was outside, and that he went to his aunt's house and then home. Although he denied witnessing the shooting, he testified that he had obtained information that two males on bikes were firing guns and that one of the males was his cousin Delrico Grace. He admitted that he filed an alibi statement indicating he never went near East 84th Street and that he lied to cover himself. He denied telling Delrico Howard about a situation happening.

{¶11} William Jenkins's medical records reflecting a gunshot wound to the head were admitted into evidence. Photos of bullet holes in the neighboring homes were introduced, as well as testimony from the neighbors. Nobody saw a gun in appellant's hands. Madelyn returned to her mother's house in Youngstown and was not cooperative in the investigation. The parties stipulated to appellant's prior conviction for drug trafficking.

{¶12} The trial court found appellant guilty of all charges with the corresponding gun specifications. The court sentenced him to a total aggregate prison term of 12 years, which included the sentences on all counts running concurrent.

{¶13} Appellant timely filed this appeal. He raises three assignments of error for our review. Under his first and second assignments of error, appellant claims that his convictions are against the manifest weight of the evidence and that there was insufficient evidence to sustain his convictions.

{¶14} When an appellate court reviews a claim of insufficient evidence, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The weight given to the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. When reviewing a claim challenging the manifest weight of the evidence, the test is as follows:

> The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.

*State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *See Thompkins* at 388.

{¶15} Felonious assault is defined by R.C. 2903.11(A) as follows: "(A) No person shall knowingly do either of the following: (1) Cause serious physical harm to another * * *; (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."

{¶16} Improperly discharging a weapon into a habitation is defined by R.C. 2923.161(A)(1) as follows: "(A) No person, without privilege to do so, shall knowingly

do any of the following: (1) Discharge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual[.]"

{¶17} Having weapons while under disability is defined by R.C. 2923.13(A)(3) as follows: " (A) Unless relieved from disability * * *, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * (3) The person * * * has been convicted of any felony offense involving the illegal possession * * * or trafficking in any drug of abuse[.]"

{¶18} Appellant argues that there was not sufficient evidence to place him at the scene of the crime or to justify his convictions on all counts. He claims that the witnesses were inconsistent in their testimony as to where the gunshots came from and as to the color of the car, that he was not identified in the 911 calls that were made, and that he testified he was at his aunt's house watching a ball game on television. He further claims there was no physical evidence to show that a gun was fired by him or a passenger from his car.

{¶19} Our review of the record reflects that the testimony of the witnesses was mostly consistent. Multiple witnesses who were familiar with appellant identified him as the driver of the vehicle involved in the shooting and described his vehicle as a rusted, gray-colored Delta. The witnesses testified that the vehicle passed the house several times; that four persons were in the vehicle; that on the last trip, the car drove slowly with two persons in the vehicle followed by two persons on bicycles; and that shots came from the males on the bikes and from the passenger in the vehicle. Four persons were outside

the house in the line of fire. One person was struck by a bullet, and two neighboring houses had bullet holes. Madelyn's father testified that appellant drove by the next day and made a gun-like gesture.

{¶20} Appellant and Madelyn had recently broken up. Appellant conceded that their relationship had been violent. He admitted that he was by the East 84th Street house earlier in the day, that he had gone to the house at 141st Street and Shaw Avenue and encountered Madelyn, and that he later drove by the East 84th Street house upon what he claims was an invitation to fight. He also admitted that he drove a gray Delta and that there were four persons in his car. While appellant denied any involvement in the shooting, he admitted he filed an alibi statement indicating he never went near East 84th Street and that he lied to cover himself. There was also testimony that appellant told Delrico Howard that "a situation had happened."

{¶21} Upon our review, we find there was ample evidence to support the state's claims that appellant was complicit in the crimes and that he was the driver of the vehicle and instigator of the shooting. While appellant claims there was no physical evidence that he had a gun or that a gun was shot from his vehicle, the testimony and evidence clearly establish that guns were involved in the incident. William Jenkins sustained a gunshot wound to his head, and two neighboring houses had bullet holes in them. Further, it was never contended that appellant was one of the gunmen. Rather, the record supports the conclusion that he aided and abetted in the offenses.

**{¶22}** Ohio's complicity statute, R.C. 2923.03(A), provides, in pertinent part: "No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: (2) Aid or abet another in committing the offense; * * *." Pursuant to R.C. 2923.03(F), a person who is guilty of complicity in the commission of an offense "shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated * * * in terms of the principal offense."

**{¶23}** As stated by this court in *State v. Langford*, 8th Dist. No. 83301, 2004-Ohio-3733, ¶ 20, 21:

> In order to constitute aiding and abetting, the accused must have taken some role in causing the commission of the offense. *State v. Sims* (1983), 10 Ohio App.3d 56, 10 Ohio B. 65, 460 N.E.2d 672. "The mere presence of an accused at the scene of the crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor." *State v. Widner* (1982), 69 Ohio St.2d 267, 269, 431 N.E.2d 1025, 1027. Additionally, even if the accused has knowledge of the commission of the crime, his presence at the scene is not enough to convict him of aiding and abetting. *State v. Cummings* (Apr. 21, 1992), Franklin App. No. 90AP-1144, 1992 Ohio App. LEXIS 2139, citing *United States v. Head* (C.A.6, 1991), 927 F.2d 1361, 1373; *State v. Woods* (1988), 48 Ohio App.3d 1, 2, 548 N.E.2d 954. A person aids or abets another when he supports, assists, encourages, cooperates with, advises, or incites the principal in the commission of the crime and shares the criminal intent of the principal. *State v. Johnson*, 93 Ohio St.3d 240, 245-246, 2001-Ohio-1336, 754 N.E.2d 796. "Such intent may be inferred from the circumstances surrounding the crime." *Id.* at 246, 754 N.E.2d 796.
>
> Aiding and abetting may be shown by both direct and circumstantial evidence, and participation may be inferred from presence, companionship, and conduct before and after the offense is committed. *State v. Cartellone* (1981), 3 Ohio App.3d 145, 150, 3 Ohio B. 163, 444 N.E.2d 68, citing *State*

*v. Pruett* (1971), 28 Ohio App.2d 29, 34, 273 N.E.2d 884. Aiding and abetting may also be established by overt acts of assistance such as driving a getaway car or serving as a lookout. Id. at 150, 444 N.E.2d 68. See *State v. Trocodaro* (1973), 36 Ohio App.2d 1, 301 N.E.2d 898.

**{¶24}** "It is well settled that an unarmed accomplice can be convicted of an underlying felony, together with a firearm specification, based on an aider and abettor status." *State v. Porch*, 8th Dist. No. 65348, 1994 Ohio App. LEXIS 1936, *11 (May 5, 1994), citing *State v. Chapman*, 21 Ohio St.3d 41, 487 N.E.2d 566 (1986); *State v. Moore*, 16 Ohio St.3d 30, 476 N.E.2d 355 (1985); *see also State v. Drane*, 2d Dist. No. 23862, 2010-Ohio-5898, ¶ 18 ("an aider and abetter can be found guilty of a firearm specification"); *In re J.H.*, 8th Dist. No. 85753, 2005-Ohio-5694, ¶ 33. Moreover, "[a]n accomplice to a crime * * * is subject to the same prosecution and punishment, including sentencing enhancements, as the principal offender." *State v. Fulton*, 8th Dist. No. 96156, 2011-Ohio-4259, ¶ 42.

**{¶25}** In this case, there is sufficient evidence showing that the shooting was a joint and concerted effort and that appellant acted in complicity with the men carrying the weapons. Appellant's participation in the crimes can be inferred from his conduct before and after the offenses, as well as his identification as the driver of the vehicle involved in the shooting and the concerted actions of the offenders. As such, the record supports the conclusion that appellant aided and abetted the commission of the crimes.

{¶26} When viewing the evidence in a light most favorable to the prosecution, we find any rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. Further, after reviewing the entire record, weighing the inferences and examining the credibility of witnesses, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice. Therefore, there is sufficient evidence to support the convictions, and the convictions are not against the manifest weight of the evidence.

{¶27} Under his third assignment of error, appellant claims that he was denied effective assistance of counsel. In order to substantiate a claim of ineffective assistance of counsel, the appellant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant so as to deprive him of a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 98, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Judicial scrutiny of defense counsel's performance must be highly deferential. *Strickland* at 689. In Ohio, there is a presumption that a properly licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 1999-Ohio-102, 714 N.E.2d 905. The defendant has the burden of proving his counsel rendered ineffective assistance. *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 223.

{¶28} Appellant argues that his trial counsel was ineffective because he advised appellant to waive a jury trial, failed to call alibi witnesses, did not adequately cross-examine witnesses regarding inconsistencies surrounding the shooting, and

provided no alternative theory in the case. We find no merit to appellant's ineffective assistance of counsel claim.

{¶29} The record reflects that the court appropriately advised appellant of his right to a jury trial and supports the trial court's conclusion that the jury waiver was made knowingly, voluntarily, and intelligently. Appellant conceded on the record that he lied with regard to his alibi statement, which indicated he never went near East 84th Street. He testified that he had driven by the East 84th Street house on the night of the shooting and that his alibi statement was incorrect. Further, the record reflects that defense counsel conducted a thorough cross-examination of the witnesses and adequately challenged the evidence against appellant. Insofar as appellant claims defense counsel should have provided an alternative theory of the case, he fails to articulate what other theory should have been presented. While he referenced his cousin, Delrico Grace, as having been rumored to be one of the shooters, there was eyewitness testimony that appellant was the driver of the gray Delta involved in the shooting.

{¶30} We find defense counsel's actions fell within the scope of reasonable trial strategy. "Trial tactics and strategies do not constitute a denial of effective assistance of counsel." *State v. Vargas*, 8th Dist. No. 97376, 2012-Ohio-2767, ¶ 14, citing *State v. Gooden*, 8th Dist. No. 88174, 2007-Ohio-2371, ¶ 38. Additionally, appellant has failed to demonstrate any prejudice resulting from counsel's trial strategy. Accordingly, we overrule appellant's third assignment of error.

{¶31} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
EILEEN A. GALLAGHER, J., CONCUR