[Cite as *State v. Takacs*, 2015-Ohio-4585.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102543**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# RONALD TAKACS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-588601-A

**BEFORE:** McCormack, J., E.A. Gallagher, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** November 5, 2015

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square
Suite 1616
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Carl Mazzone
Assistant County Prosecutor
8th Floor, Justice Center
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, J.:

{¶1} Defendant-appellant Ronald Takacs appeals his conviction for felonious assault. Finding no merit to his appeal, we affirm.

Procedural History and Substantive Facts

{¶2} Takacs's conviction arose from an incident that occurred on August 14, 2014, during which he allegedly aimed his vehicle at Christine Peters and accelerated toward her in the parking lot of a Home Depot store. Takacs was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(2). The indictment alleged that Takacs "did knowingly cause or attempt to cause physical harm * * * by means of a deadly weapon or dangerous ordnance, to wit: motor vehicle."

{¶3} The case proceeded to a jury trial. At trial, the state presented the following witnesses: Christine Peters, Lee Cozad, and Lieutenant Christopher Britton. The state also provided a videotape of Home Depot's surveillance camera footage as state's exhibit No. 2. The following facts were adduced at trial.

{¶4} Christine Peters drove her silver Volkswagen to the Home Depot store located at Severance Town Center in Cleveland Heights on August 14, 2014. From the main entry lane, she made a right turn into a parking lane. While stopped to turn left into a parking space, she saw a man pushing a cart near that space and waited until the gentleman had cleared the parking space. While waiting, she noticed another vehicle she described as a "bluish-green minivan type of car" approach and begin to pass her

from her left side. The driver of this van was later identified as Ronald Takacs. She testified that the van continued to travel past her on the left side and, as it passed, the driver "leaned over, yelled at me, and flicked me off [with his middle finger] through the passenger side window." She could not hear what he said, but she could hear yelling. Peters stated that she was surprised to see this vehicle, in a parking lane, approach and pass from the left. She honked her horn at him. Peters stated that after the van passed her, it sped down the lane and turned left at the end of the parking area.

{¶5} Peters then parked her car and proceeded on foot in the direction of the store. As she was walking across the main entrance area, heading toward the store, she observed the same vehicle that had passed her earlier now turn left onto the entry lane she was crossing. The moving van was now facing her. She testified that she saw the van heading at her and it appeared to be accelerating. She testified that the driver was aiming his car at her and "going faster and faster and faster, to the point where I had to run and jump out of the way to avoid being hit by his car." Peters stated that the van was approximately ten feet away from her when she realized that the driver was not slowing down and if she did not move, she would be hit. She stated that the driver appeared to be angry. He was yelling something at her through the window while passing her.

{¶6} Immediately after the incident, Peters was able to get the van's license plate number and she spoke with a fellow customer, a gentleman who witnessed the incident. She stated that she was in shock and did not know what to do and she was very shaken

and upset. Shortly thereafter, she entered the store and, with a store employee's assistance, phoned the police.

{¶7} Lee Cozad testified that on the afternoon of August 14, 2014, he went to Home Depot in order to pick up some items he had ordered. He parked his vehicle at the end of the parking lot and proceeded to walk toward the store's front entrance. As he approached the canopy covering the contractor's entrance, he observed a woman in a silver Volkswagen attempt to pull into a parking space and he observed a blue van approach the woman's car from behind. Cozad testified that the driver of the van appeared to be very angry "by how long the lady was taking to get a parking spot" because he had yelled "something derogatory" at the woman from his open window. Cozad stated that the van then cut past her vehicle and sped down toward the end of the parking lot.

{¶8} Cozad continued to walk toward the front doors of the store. He testified that when he was approximately 20 feet from the front doors, he heard the van approach from behind him. As the van approached, he heard the engine accelerate, "almost like the driver took the accelerator pedal and just shoved it right down on the floor." The woman from the silver car was in the same area in which he was walking. He observed the van "careen toward [the lady from the silver car]" and he heard the driver of the van yell something "nasty" out of the window. Cozad testified that if the woman had not moved out of the way, she would have been hit.

**{¶9}** Cozad was able to get the van's license plate number before it sped away, and when the police arrived, he provided a written statement of his observations of the incident to the police. Cozad stated that the woman from the silver car was visibly shaken and "very ashen." He testified that shortly after the incident, the woman began to cry and she "had a complete breakdown."

**{¶10}** Lieutenant Christopher Britton, who was working security detail for Severance Town Center on the day in question, responded to the scene. He testified that he took statements from Cozad and Peters, who was visibly shaken and crying. He obtained a license plate number of the fleeing vehicle from both Cozad and Peters. During the course of the investigation, Lt. Britton was able to confirm that the license plate matched a vehicle that was registered to Takacs. Peters identified the photograph of Takacs obtained from the vehicle registration as the man who almost hit her. During the investigation, Lt. Britton also secured the surveillance video of the incident.

**{¶11}** Following Lt. Britton's testimony, the state rested. At the close of the state's case, Takacs moved for acquittal under Crim.R. 29, which the court denied. No witnesses testified on behalf of the defense.

**{¶12}** The jury found Takacs guilty of felonious assault as charged. The trial court sentenced Takacs to 28 days local incarceration and 18 months community control sanctions.

**{¶13}** Takacs now appeals his conviction, raising two assignments of error: (1) the state failed to present sufficient evidence of felonious assault; and (2) his conviction is against the manifest weight of the evidence.

Sufficiency and Manifest Weight of the Evidence

**{¶14}** Takacs claims that the state failed to provide sufficient evidence to support his conviction for felonious assault. He also argues that his conviction is against the manifest weight of the evidence.

**{¶15}** When assessing a challenge of sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

**{¶16}** While the test for sufficiency of the evidence requires a determination whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion. *Thompkins* at 390. Also

unlike a challenge to the sufficiency of the evidence, a manifest weight challenge raises a factual issue.

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A finding that a conviction was supported by the manifest weight of the evidence, however, necessarily includes a finding of sufficiency. *State v. Howard*, 8th Dist. Cuyahoga No. 97695, 2012-Ohio-3459, ¶ 14, citing *Thompkins* at 388.

{¶17} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. When examining witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). A factfinder is free to believe all, some, or none of the testimony of each witness appearing before it. *State v. Ellis*, 8th Dist. Cuyahoga No. 98538, 2013-Ohio-1184, ¶ 18.

**{¶18}** Takacs was convicted of felonious assault in violation of R.C. 2903.11(A)(2), which provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." A person acts knowingly, regardless of his or her purpose, "when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

**{¶19}** A "deadly weapon" is "any instrument, device, or thing capable of inflicting death, and designed or specifically adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A). It is well settled that a motor vehicle can be classified as a "deadly weapon" under R.C. 2923.11 when it is "used in a manner likely to produce death or great bodily harm." *State v. Andre*, 8th Dist. Cuyahoga No. 101023, 2015-Ohio-17, ¶ 37; *State v. Fredericy*, 8th Dist. Cuyahoga No. 95677, 2011-Ohio-3834, ¶ 12; *State v. Tate*, 8th Dist. Cuyahoga No. 87008, 2006-Ohio-3722, ¶ 23, citing *State v. Troyer*, 8th Dist. Cuyahoga No. 61983, 1993 Ohio App. LEXIS 1791 (Apr. 1, 1993). This court has found that aiming a vehicle in the direction of an individual in a parking lot while accelerating that vehicle toward that individual is an action that "is likely to result in someone being seriously injured or killed." *Andre* at ¶ 37.

**{¶20}** Takacs contends that the state failed to present sufficient evidence supporting his conviction. Specifically, he claims that the surveillance video does not

support the conclusion that he "used his car with the requisite mens rea" for felonious assault or that he used his car to cause physical harm. In support of his contention, Takacs argues that the video demonstrates that he applied his brakes "throughout his interaction" with Peters, he exercised complete control over his vehicle during the alleged incident, and he did not direct his vehicle toward Peters, and therefore, there was insufficient evidence of felonious assault. We disagree.

{¶21} When considering a challenge to the sufficiency of the evidence, we review the evidence admitted at trial to determine "whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus.

{¶22} Notwithstanding the surveillance video, the testimony of both Peters and Cozad was sufficient evidence, if believed, that Takacs knowingly caused or attempted to cause physical harm to Peters with his vehicle. Peters testified that when she first encountered Takacs in the parking lot, he passed her on the left, yelled at her, "flicked [her] off" with his middle finger, and sped away. She observed Takacs continue to turn his vehicle to face where she was crossing the main entry lane. She testified that Takacs aimed his car at her, accelerated, "going faster and faster and faster," and angrily yelled something out the window at her. She further testified that he was very close to her and had she not jumped out of the way, she would have been hit.

{¶23} Cozad likewise testified that Takacs initially appeared angry with Peters when Peters was attempting to park her car and he yelled "something derogatory" at her

as he sped away from her. Cozad also testified that as he and Peters were crossing the lane, heading toward the front doors of the store, he heard the van approach, with the engine accelerating "almost like the driver took the accelerator pedal and just shoved it right down on the floor." Finally, Cozad testified that he saw the van "careen toward [Peters]" while the driver yelled something "nasty" at her. He stated that had Peters not jumped out of the way, Takacs would have hit her with his van.

{¶24} The testimony of Peters and Cozad, in and of itself, is sufficient evidence for the trier of fact to find that Takacs knowingly attempted to cause physical harm. Takacs appeared angry and directed that anger toward Peters. Both Cozad and Peters testified that Takacs aimed his car at Peters and accelerated. Peters would likely have been hit had she not jumped out of the way of Takacs's fast-moving van.

{¶25} Accordingly, we find that any rational trier of fact could have found the essential elements of felonious assault proven beyond a reasonable doubt. Takacs's first assignment of error is overruled.

{¶26} In his second assignment of error, Takacs contends that his conviction for felonious assault was against the manifest weight of the evidence. In support of his argument, Takacs presents the same arguments as he presented in his challenge to the sufficiency of the evidence. Takacs essentially claims that the evidence failed to show that he acted knowingly on August 14. Specifically, he argues that the "simple fact" that he applied his brakes during the altercation with Peters, as demonstrated in the

surveillance video, belies the conclusion that he "knowingly intended to attempt to cause harm through the use of his van." We disagree.

**{¶27}** In determining whether a verdict is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving any conflicts in the record, the jury clearly lost its way. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541 (1997). "Weight of the evidence concerns the inclination of the *greater amount of credible evidence * * * to support one side of the issue rather than the other.*" *Id.*

**{¶28}** Takacs claims that the surveillance video precludes a finding that he knowingly caused or attempted to cause Peters physical harm. A person acts "knowingly" when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B). The statute does not require a specific intent or purpose. *State v. Ferrell*, 8th Dist. Cuyahoga No. 93003, 2010-Ohio-2882, ¶ 45. Knowledge is a state of mind that must be proven from the surrounding facts and circumstances. *In re F.D.*, 8th Dist. Cuyahoga No. 102135, 2015-Ohio-2405, ¶ 16, citing *State v. Anderson*, 10th Dist. Franklin No. 06AP-174, 2006-Ohio-6152, ¶ 42. "The mental element of knowledge does not require an inquiry into the purpose for an act, but [it] involves the question of whether an individual is aware that his or her conduct will probably cause a certain result or will probably be of a certain nature." *In re F.D.*, citing *Anderson* at ¶ 43.

{¶29} Here, Peters testified that Takacs demonstrated anger.  He aimed his car at her, accelerated, "going faster and faster and faster," and he yelled something out the window at her as he sped past her.  She also testified that had she not jumped out of the way, she would have been hit.  She was visibly shaken and upset immediately following the incident.  Cozad, an individual who was walking in the same direction and area as Peters, also testified that he saw Takacs's  van "careen toward [Peters]" while the driver yelled something "nasty" at her.  He stated, in fact, that he heard the vehicle's acceleration moments before Takacs sped toward Peters that sounded as if "the driver took the accelerator pedal and just shoved it right down on the floor."  Cozad also testified that had Peters not jumped out of the way, Takacs would have hit her with his van.

{¶30} We find that the video does not contradict the above testimony.  Rather, it supports it.  The video shows both Peters and Cozad simultaneously turn their heads into the direction of the oncoming vehicle as they cross the main driveway near the front entrance to the store, which suggests both individuals heard the vehicle accelerate.  The video then shows Takacs heading directly into Peters's path at an apparent high rate of speed, making no effort to avoid Peters.  In fact, it appears from the video that the front end of the van veers slightly toward Peters just as the van reaches her.  Although the video does reveal the illumination of brake lights for a brief moment, the brake lights are not illuminated at the very moment the front end of Takacs's van veers toward Peters and nearly hits her.  Just at that moment, as the van reaches Peters, the video shows Peters

running and jumping to get out of the immediate path of the oncoming vehicle.   In fact, it appears from the video that had Peters not jumped out of the vehicle's path, she would have likely been hit. The video does not show Takacs slowing or stopping at any point.

**{¶31}** Based on our review of the entire record in this case, weighing the evidence and all reasonable inferences therefrom, we find there was competent, credible evidence as to the requisite mens rea element of felonious assault — i.e., that Takacs knowingly caused or attempted to cause physical harm to Peters, regardless of his actual intention or purpose.   The fact that Takacs briefly applied his brakes moments before reaching Peters as she crossed the street does not negate Takacs's knowledge.   This is not one of the exceptional cases in which the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.

**{¶32}** Takacs's second assignment of error is overruled.

**{¶33}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.   The defendant's conviction having been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

EILEEN A. GALLAGHER, P.J., and
ANITA LASTER MAYS, J., CONCUR