[Cite as *State v. Smith*, 2016-Ohio-5512.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 103483**

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**RONALD O. SMITH, SR.**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-593113-A

**BEFORE:** McCormack, J., Kilbane, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** August 25, 2016

**ATTORNEY FOR APPELLANT**

Britta M. Barthol
P.O. Box 218
Northfield, OH 44067


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Melissa Riley
Assistant County Prosecutor
9th Floor, Justice Center
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, J.:

{¶1} Defendant-appellant Ronald O. Smith appeals his conviction for sexual battery and kidnapping. For the following reasons, we affirm.

Procedural History

{¶2} On February 10, 2015, Smith was charged with rape in violation of R.C. 2907.02(A)(2), kidnapping in violation of R.C. 2905.01(A)(4), with a sexual motivation specification, and intimidation of a witness in violation of R.C. 2921.04(B)(1). Following a jury trial, the jury returned a verdict of guilty on the lesser included offense of sexual battery in violation of R.C. 2907.03(A)(1) and guilty of kidnapping with sexual motivation specification. The jury found Smith not guilty of intimidation of a witness.

{¶3} After a hearing, the court found the offenses to be allied and sentenced Smith to three years imprisonment. The court also found Smith to be a Tier III sex offender and explained to Smith the registration duties that accompany his classification.

{¶4} Smith appealed his conviction, assigning five errors for our review:

I. Appellant received ineffective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendment to the United States Constitution when his attorney failed to object to improper victim impact testimony.

II. The trial court erred in not allowing testimony of a prior inconsistent statement of alleged victim.

III. Appellant was denied his right to effective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendment to the United States Constitution when his attorney failed to preserve the record for appellate review.

IV. The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that appellant was guilty of sexual battery and kidnapping.

V. The appellant's convictions for sexual battery and kidnapping were against the manifest weight of the evidence.

Evidence at Trial

**{¶5}** In January 2015, A.Y. needed assistance moving into her new apartment. She had help from her good friend, her "god-brother" Lamont Lyle, whom she had known since childhood. Lyle enlisted additional help from his friend, Ronald Smith, who owns a truck. A.Y. did not know Smith and had never met Smith prior to receiving his offer to help with the move. One day that January, Smith and Lyle helped A.Y. move some clothing, houseware items, and electronics into the new apartment. A.Y. testified that she struck up a friendship with Smith and they communicated with each other after he helped with the move. She stated that she had no interest in having a romantic relationship with him. At one point, A.Y. invited Smith to dinner at her new apartment because her daughters were gone for the evening. She stated that Lyle was also invited to dinner. The dinner did not take place because Smith was unable to attend.

**{¶6}** On January 31, A.Y. contacted Smith for help picking up a couch for her and bringing it to her apartment. A.Y. stated that she requested Smith's help because the gentleman who was supposed to help did not show. A.Y. testified that she waited for Smith at Lyle's house and had two beers while she waited. By the time Smith arrived, however, it was too late to get the couch, so she indicated that she was going home. Smith offered to take A.Y. home. Before arriving home, they stopped at the store and purchased additional beer. Upon arriving home, A.Y. invited Smith in for drinks. A.Y. introduced Smith to her son, R.Y., who was 18 years old at the time. R.Y. was home from the Cleveland Job Corps where he works as a brick layer. R.Y. and Smith spoke with each other for approximately 45 minutes before R.Y. left for a friend's house for the evening. R.Y. stated that Smith and his mother were talking and

drinking beer and that there was no romantic activity between Smith and A.Y. while he was there.

{¶7}    After her son left, A.Y. told Smith that she was tired and she would talk to him later.   A.Y. testified that at this point, Smith said "no, no," and he took the beer out of her hand, placed it down, took both of her wrists, and directed her to the bedroom.   Once in the bedroom, still holding onto her wrists, he lowered her onto the floor.   She had no bedroom furniture yet. A.Y. testified that she repeatedly told Smith that she "[didn't] want to do this," she did not want to have sex, but Smith said "I do."   She stated that she was scared and intimidated.   Smith then unbuttoned A.Y.'s pants, pulled them down, and removed one of her legs from the pants.   A.Y. repeated that she did not want to have sex, saying, "No, I don't want to do this, Ron.   Don't do this.   Don't do this."   According to A.Y., Smith told her, "It's going to be worth your while." He then put the weight of his body on A.Y., to the point where she could not move, and he proceeded to have sexual intercourse with her.   A.Y. testified that she was lying there on her back, crying, and she told him she was not enjoying herself.   She stated that she did not scream or cry out for help because she was afraid and she did not want to make the situation any worse.

{¶8} A.Y. testified that after Smith was finished, he got up and went to the bathroom. At that point, she got up.   She then sat on a crate in the kitchen, not speaking.   Smith asked her, "What's wrong with you?   What are you about to do?"   Because she was scared, A.Y. responded, "Nothing.   Just leave."   She testified that she could not believe what had just happened, she was "stunned," and she felt "sick," "used," and "numb."   When Smith left the apartment, A.Y. could not find her phone and feared that Smith may have taken it with him, so she ran off after him.   She saw Smith "[speed] off real, real fast," and she returned to her apartment.   Upon returning, A.Y. found her phone and immediately called the rape crisis center.

She reported that she was raped and was scared, and she asked what she should do. The rape crisis center advised her to call the police.

{¶9} A.Y. then phoned 911 and reported that she had been raped. She admitted to the 911 operator that she had been drinking, and she cried throughout the phone call. Although A.Y. testified that she was "a bit tipsy," she stated that she was not drunk and she "remembers everything that happened that afternoon."

{¶10} Lakewood police officer, Justin Jameson, responded to the 911 call at approximately 4:30 p.m. Officer Jameson testified that A.Y. was visibly upset, "crying, * * * sobbing." He stated that he was unable to understand A.Y. because she was so upset and they needed to calm her down. Officer Jameson completed an incident report, and he called an ambulance to take A.Y. to the hospital. A.Y. went to the hospital, where Christina Raymond, a SANE nurse, performed a sexual assault examination and completed a rape kit. Raymond testified that A.Y. cried and sobbed during the examination. Later, A.Y. gave a more complete statement to a detective with the Lakewood Police Department, and she told Lyle and R.Y. what had happened about the incident with Smith.

{¶11} R.Y. testified that when he returned home at approximately 10:00 p.m. that evening, his mother "looked sick, disgusted." R.Y. testified that his mother has changed since the incident of January 31, stating that "she just don't talk no more to anybody."

{¶12} Lyle testified that A.Y. told him what happened with Smith on January 31 approximately two weeks after the incident. He stated that A.Y. was "frustrated and mad at the world, like having a, you know, spell or whatever. * * * [She was] mad at me * * * [b]ecause I didn't go with her [back to her apartment on the evening in question]." Finally, Lyle stated that he and A.Y. no longer maintain a friendship.

Prior Inconsistent Statement

**{¶13}** In his second assignment of error, Smith contends that the trial court erred when it did not permit trial counsel to question the victim during cross-examination regarding alleged inconsistent statements the victim made to police.   In the interest of efficiency, we will address this assignment of error first.

**{¶14}** Evid.R. 613 governs the admissibility of extrinsic evidence in relation to a witness's prior inconsistent statement.   In order to invoke Evid.R. 613, the prior statement must be inconsistent.   *Bartley v. Little*, 5th Dist. Muskingum No. CT99-0016, 2000 Ohio App. LEXIS 6238, at 18 (Dec. 28, 2000).   Extrinsic evidence of a prior inconsistent statement by a witness is admissible when both of the following conditions are satisfied:

(1)     If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;

[and]

(2)     The subject matter of the statement is one of the following:
(a)     A fact that is of consequence to the determination of the action other than the credibility of a witness;

(b)     A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(A), or 616(B); [or]

(c)     A fact that may be shown by extrinsic evidence under the common law of

impeachment if not in conflict with the Rules of Evidence.

Evid.R. 613(B).

**{¶15}** Under Evid.R. 613(B)(2), extrinsic evidence is permitted "if the subject matter of the prior statement is a consequential fact under the substantive law."   Staff Notes, 1998 Amendments to Evid.R. 613, citing Evid.R. 401 ("Relevant evidence" is "evidence having a

tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). On the other hand, if "an inconsistency 'relates to a matter only collateral to the issue of [the] defendant's guilt,' extrinsic evidence of a prior inconsistent statement may be properly excluded." *State v. Kemp*, 8th Dist. Cuyahoga No. 97913, 2013-Ohio-167, ¶ 37, quoting *State v. Eason*, 8th Dist. Cuyahoga No. 66060, 1994 Ohio App. LEXIS 4636, 13-14 (Oct. 13, 1994).

**{¶16}** A trial judge has broad discretion in determining the admissibility of evidence, and the court's determination will not be disturbed on appeal absent a clear showing of an abuse of its discretion. *State v. Heineman*, 8th Dist. Cuyahoga No. 103184, 2016-Ohio-3058, ¶ 15, citing *Renfro v. Black*, 52 Ohio St.3d 27, 32, 556 N.E.2d 150 (1990). This discretion applies equally to the court's determination whether to admit a prior inconsistent statement that is collateral to the issue being tried and pertinent to the credibility of a witness. *State v. Soke*, 105 Ohio App.3d 226, 239, 663 N.E.2d 986 (8th Dist.1995).

**{¶17}** Here, on cross-examination, defense counsel questioned A.Y. about her prior videotaped statement to the police, specifically concerning the number of texts and phone calls to Smith from her phone. Counsel then requested a sidebar during which he argued to the court that A.Y. made inconsistent statements to the police, including her prior address, the number of phone calls and texts, and the subject matter of the texts.

**{¶18}** During sidebar, the court advised counsel that it reviewed A.Y.'s videotaped statement. The court then proceeded to review the 25-page transcript of the statement with defense counsel on the record, allowing counsel to note the alleged inconsistencies. The exchange between the court and counsel included the following:

Counsel:     Page 2, your Honor * * *.  I had to move out of my place, that was on Fulton.  The testimony was nothing about Fulton Avenue.  She never said she lived on Fulton.  She spoke of completely different addresses.

Court:       * * * That is not material because she called it West 40th, she called it Bush, and that is all in the Fulton area there.  If you are familiar with that part of the neighborhood. * * * They call their streets whatever.  And that's not material.

* * *

Counsel:     Page 3 at the bottom, her casual conversation statement is in direct conflict with her testimony elicited by myself regarding the text messages which go way beyond the point of casual conversation talking about my girls are going to go.  Come over for the night.

Court:       You have to look at this as a whole, the statement, and I saw the whole video and * * * there is nothing inconsistent because if you look towards the end of it she said that she told him the girls were gone, her son was there, and Lamont was coming over.  There's nothing inconsistent.

* * *

Counsel:     So your Honor, on page 6 towards the top * * *.  There's a question by the detective, since all of this happened a lot of time has anything come up that you maybe didn't tell the police initially?  I think * * * the videotape statement is clear that she spoke of one, two, three times on the phone or text messages.  That's in direct conflict with the phone records which show in excess of 20 to 30 texts.

Court:       Again, look at the whole statement where she calls her friend to get the phone number to the minute phone and she says, oh yeah, there will be texts and phone calls on the other phone as well. * * * So I don't find this inconsistent number one.  Nor do I find it material to whether or not a rape took place.

* * *

Counsel:     Page 10, your Honor, * * * detective, how many times did you call between the 10th and 31st, at one, two, three.

State:  I would draw your attention to two lines under that where she said I text him multiple times.

Court:  I saw the video.  So I saw that she was trying to remember and answer these questions and, as I said, take it as a whole, * * * she remembers that she has the other phone with things on that phone as well.  And again, they're not really material.

* * *

Counsel:  Page 12, your Honor, she speaks of text message in response to the detective who sees the text message at 5:07 p.m., then goes on to say, I was with the police at 5:00 so I don't know.  So these are the only text messages that you sent back and forth? Uh-huh.  Them are the only ones because I don't erase none of my texts.  All my texts are in my phone.

* * *

Court:  * * * Then [on] page 14 near the bottom, * ** * It wasn't on this phone, it was on a minute phone, * * *.  So there are texts between the two beyond that phone.  They're trying to figure out the number.

So she is saying that there [are] texts and phone calls on the minute phone.  And on that phone all together, six text messages, two here, four there.  And I don't believe that I would know the number of times I text message[d] my son today, let alone today and yesterday, let alone a month ago.  So the number does not in my mind rise to the level of material, nor is it inconsistent.

* * *

She doesn't deny making them.  You can read the entire statement and see that she is remembering more and more as the statement goes on.  I don't believe that she is feigning memory of any of them at all.

{¶19} The above discussion demonstrates that the trial court considered the videotaped statement and reviewed the written transcript at length, and it considered counsel's argument relating to each alleged inconsistency.  After full consideration, the court determined that the

alleged prior inconsistent statements are either not inconsistent, are not material, or both. Specifically, as it relates to the number of texts A.Y. sent to Smith, or the number of phone calls made, the court noted that A.Y. did not deny sending them; rather, she offered an explanation for the multiple texts. The court noted that she appeared to remember more as the statement continued. Additionally, the court determined that a statement regarding the number of text messages sent, or the incorrect street name of a prior residence, is not of consequence to a determination as to whether an assault had occurred.

{¶20} The trial court has broad discretion in determining the admissibility of evidence. In this case, the court considered the issue at length before finding the statements to be immaterial or not inconsistent. We therefore find that the trial court did not abuse its discretion in denying the admission of A.Y.'s statement to the police.

{¶21} Smith's second assignment of error is overruled.

Ineffective Assistance of Counsel

{¶22} In his first assignment of error, Smith contends that he received ineffective assistance of counsel when his trial counsel failed to object to alleged improper victim impact testimony. In his third assignment of error, Smith claims that he also received ineffective assistance of counsel when counsel failed to preserve the record for appellate review. We address the assignments together.

{¶23} In order to establish a claim of ineffective assistance of counsel, the defendant must show that his trial counsel's performance was deficient in some aspect of his representation and that deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Counsel's performance will be considered deficient only when that performance falls below an objective

standard of reasonableness. *Strickland* at 688. Under *Strickland*, our scrutiny of an attorney's representation must be highly deferential and we must indulge "a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Id.* at 689. And in Ohio, every properly licensed attorney is presumed to be competent and, therefore, a defendant claiming ineffective assistance of counsel bears the burden of proof. *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985).

{¶24} In order to show prejudice, a defendant must demonstrate that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *State v. Geraci*, 8th Dist. Cuyahoga Nos. 101946 and 101947, 2015-Ohio-2699, ¶ 12. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome" of the proceeding. *Strickland* at 694.

{¶25} Smith alleges that he received ineffective assistance of counsel when his trial counsel failed to object to improper victim impact testimony from A.Y. when she explained what has happened to her since the incident:

> I've sought counseling at the rape crisis center. * * * My defense mechanisms are really strong. I don't trust anybody. I can't stand for anybody to get too close to me, stand behind me, or if I'm * * * walking down the street, somebody is riding a car and the car slows up, my defense mechanism automatically just begin like, oh, they coming to get you.

{¶26} Smith also contends that statements from Lyle and R.Y. were improper. Lyle testified that after the incident, he had a conversation with A.Y., during which time A.Y. told Lyle what happened with Smith. Lyle stated that A.Y. was "frustrated and mad at the world, like having a, you know, spell or whatever. * * * [She was] mad at me * * * [b]ecause I didn't go with her [back to her apartment on the evening in question]."

**{¶27}** Finally, Smith argues that R.Y.'s testimony concerning how A.Y. has changed following the incident was improper. R.Y. testified that his mother "looked sick, disgusted" and "she just don't talk no more to anybody" since January 31.

**{¶28}** Evid.R. 403(A) provides for the mandatory exclusion of relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice * * *." *See State v. Milam*, 8th Dist. Cuyahoga No. 86268, 2006-Ohio-4742, ¶ 65. Generally, victim impact testimony is excluded because it is irrelevant and immaterial to the guilt or innocence of the accused, as it principally serves to inflame the passion of the jury. *State v. Gus*, 8th Dist. Cuyahoga No. 85591, 2005-Ohio-6717, ¶ 15. The question therefore becomes whether the testimony has probative value. *Milam*, citing *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 213.

**{¶29}** Testimony that addresses the impact the crime had on a victim is admissible when the "circumstances of the victims are relevant to the crime as a whole." *State v. Priest*, 8th Dist. Cuyahoga No. 89178, 2007-Ohio-5958, ¶ 41, citing *State v. Williams*, 99 Ohio St.3d 439, 2003-Ohio-4164, 793 N.E.2d 446; *State v. Lorraine*, 66 Ohio St.3d 414, 420, 613 N.E.2d 212 (1993). Moreover, such evidence is admissible "when it is related to 'the facts attendant to the offense.'" *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 134, quoting *State v. Fautenberry*, 72 Ohio St.3d 435, 440, 650 N.E.2d 878 (1995). In particular, testimony about the nature and extent of the victim's injuries and his or her trauma is admissible because it is relevant in proving the facts attendant to the offense. *Powell* at ¶ 135. "Just as the victim of a felonious assault may testify to the treatment needed as a result of the assault in order to prove that the assault actually did occur, so may the victim of a sexual assault testify to

the lingering trauma suffered as a result of that abuse." *State v. Eads*, 8th Dist. Cuyahoga No. 87636, 2007-Ohio-539, ¶ 56.

{¶30} Here, the testimony at issue focuses on the manner in which the offenses has impacted A.Y.'s life. Testimony concerning A.Y.'s change in personality and demeanor and her need for counseling after the sexual battery and kidnapping relates to the psychological trauma she suffered. Such trauma is every bit as real as the physical scars caused by physical assaults. The evidence is therefore probative and relevant to the offenses as a whole.

{¶31} Even if we found that the above statements were improper victim impact testimony to which counsel should have objected, Smith fails to establish the second prong of the *Strickland* test. He fails to identify how he was prejudiced by the alleged improper testimony and how, if excluded, the outcome of the trial would have been different. There is no evidence that had defendant's trial counsel objected or done more to keep out the cited testimony, the outcome of defendant's trial would have been any different. *Milam*, 8th Dist. Cuyahoga No. 86268, 2006-Ohio-4742, at ¶ 80.

{¶32} Smith's first assignment of error is overruled.

{¶33} Smith also argues that trial counsel was ineffective when counsel failed to request that the transcript of A.Y.'s videotaped statement to the police be placed in the record for appellate review.

{¶34} Here, during sidebar, counsel requested A.Y.'s videotaped statement (that was reduced to a written transcript) to be admitted in its entirety. The court, however, reviewed the alleged inconsistencies individually and excluded the testimony. Defense counsel repeatedly noted his objection on the record but did not proffer the entire transcript for appellate review.

**{¶35}** It is well settled that a reviewing court cannot rule upon the exclusion of evidence by the trial court unless the rejected evidence has been made a part of the transcript of proceedings or record. *Tunison v. AG*, 10th Dist. Franklin No. 03AP-457, 2004-Ohio-1062, ¶ 17, citing *Mingo Junction v. Sheline*, 130 Ohio St. 34, 196 N.E. 897 (1935).

**{¶36}** Although trial counsel did not proffer the entire 25-page transcript concerning A.Y.'s alleged inconsistent statements, counsel reviewed the transcript at length on the record, identifying the alleged inconsistencies for the court. As previously outlined in this opinion, the court provided defense counsel ample opportunity to note his concerns on the record, and the court ruled upon each one, finding that A.Y.'s statements were not inconsistent and/or not material to whether a sexual battery had occurred. Thus, the record contained sufficient information for our review. Counsel's submission of the objectionable statements at sidebar was therefore sufficient to preserve the issue of A.Y.'s alleged inconsistent statements for appellate review, despite trial counsel's failure to proffer the entire transcript. *See State v. Serrano*, 8th Dist. Cuyahoga No. 102583, 2016-Ohio-4691, ¶ 63. Accordingly, Smith cannot show that his trial counsel's performance was deficient.

**{¶37}** Smith's third assignment of error is overruled.

### Sufficiency and Manifest Weight

**{¶38}** Smith claims that the state failed to provide sufficient evidence to support his conviction for sexual battery and kidnapping with sexual motivation specification. He also claims that his conviction was against the manifest weight of the evidence.

**{¶39}** When assessing a challenge of sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v.*

*Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

**{¶40}** While the test for sufficiency of the evidence requires a determination whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion. *Thompkins* at 390. Also unlike a challenge to the sufficiency of the evidence, a manifest weight challenge raises a factual issue.

> "The court, reviewing the entire record, weighs the evidence and all reasonable
> inferences, considers the credibility of witnesses and determines whether in
> resolving conflicts in the evidence, the jury clearly lost its way and created such a
> manifest miscarriage of justice that the conviction must be reversed and a new
> trial ordered. The discretionary power to grant a new trial should be exercised
> only in the exceptional case in which the evidence weighs heavily against the
> conviction."

*Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A finding that a conviction was supported by the manifest weight of the evidence, however, necessarily includes a finding of sufficiency. *State v. Howard*, 8th Dist. Cuyahoga No. 97695, 2012-Ohio-3459, ¶ 14, citing *Thompkins* at 388.

**{¶41}** "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212

(1967), paragraph one of the syllabus. A factfinder is free to believe all, some, or none of the testimony of each witness appearing before it. *State v. Ellis*, 8th Dist. Cuyahoga No. 98538, 2013-Ohio-1184, ¶ 18. Although the reviewing court considers the credibility of witnesses in a challenge to the manifest weight of the evidence, it does so "with the caveat that the trier of fact is in the best position to determine a witness' credibility through its observation of his or her demeanor, gestures, and voice inflections." *State v. Campbell*, 8th Dist. Cuyahoga Nos. 100246 and 100247, 2014-Ohio-2181, ¶ 39.

{¶42} Smith was convicted of sexual battery in violation of R.C. 2907.03(A)(1), which provides that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution."

{¶43} Coercion, for purposes of sexual battery, does not necessarily include force, and the state need not prove force or the threat of force in order to prove sexual battery. *In re J.A.S.*, 12th Dist. Warren No. CA2007-04-046, 2007-Ohio-6746, ¶ 18. Rather, coercion has been defined as "compel[ling] pressure." *Id.* at ¶ 19. In applying the common meaning of the word, "coerce" means "'to restrain, control, or dominate, nullifying the individual will or desire, * * * to compel to an act by force, threat, or other pressure,'" and "'to bring about * * * by force, threat, or other pressure.'" *Id.*, quoting *Webster's Third New International Dictionary* (1993); *State v. Woods*, 48 Ohio St.2d 127, 136, 357 N.E.2d 1059 (1976), *overruled in part on other grounds*, *State v. Downs*, 51 Ohio St.2d 47, 364 N.E.2d 1140 (1977) (defining "to coerce" as "to restrain, control or dominate, nullifying individual will or desire" by force, power, violence, or intimidation).

**{¶44}** Smith was also convicted of kidnapping in violation of R.C. 2905.01(A)(4), with a sexual motivation specification under R.C. 2941.147. R.C. 2905.01(A)(4) provides that "[n]o person by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o engage in sexual * * * with the victim against the victim's will." A sexual motivation specification requires the state to demonstrate that the underlying offense was committed with "'a purpose to gratify the sexual needs or desires of the offender.'" *State v. Dove*, 8th Dist. Cuyahoga No. 101809, 2015-Ohio-2761, ¶ 38, quoting R.C. 2941.147 and 2971.01(J).

**{¶45}** A kidnapping under R.C. 2905.01(A)(4) is complete when a person uses force to remove or restrain another in order to engage in sexual activity. *State v. Fischer*, 8th Dist. Cuyahoga No. 75222, 1999 Ohio App. LEXIS 5568, 15 (Nov. 24, 1999). "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1).

**{¶46}** For purposes of establishing kidnapping under R.C. 2905.01(A), the element of "restraint of liberty" means to "limit one's freedom of movement in any fashion for any period of time." *State v. Wingfield*, 8th Dist. Cuyahoga No. 69229, 1996 Ohio App. LEXIS 867, 6 (Mar. 7, 1996); *State v. Mohamed*, 8th Dist. Cuyahoga Nos. 102398 and 103602, 2016-Ohio-1116, ¶ 20.

**{¶47}** Here, Smith contends that there was insufficient evidence to support the convictions for sexual battery and kidnapping. Specifically, Smith states that the state failed to prove coercion, force, or restraint of freedom. In support, he claims that A.Y. testified that Smith gently took her wrists and gently lowered her to the bedroom floor, without using force.

{¶48} Viewing the evidence in a light most favorable to the state, we find that the victim's testimony was sufficient to support the convictions. A.Y. testified that Smith lowered her to the floor by her wrists. After he lowered her to the floor, Smith unbuttoned her pants, pulled them down, and removed one of her legs from the pants in order to have sexual intercourse with her. He then placed the weight of his entire body upon A.Y. to the point where she could not move. A.Y. stated that during the entire incident, she repeatedly told Smith "no" and that she did not want to "do this," and she was lying on her back crying while he proceeded to have sexual intercourse with her. She further testified that she was scared and intimidated by Smith and did not want to make matters worse by screaming or crying out for help.

{¶49} In light of the above, a rational trier of fact could have found sufficient evidence of coercion, force, and restraint of liberty to support Smith's convictions. Smith's fourth assignment of error is overruled.

{¶50} Smith also argues that his convictions were against the manifest weight of the evidence. He claims that A.Y. lacked credibility and reliability because A.Y. had been drinking and she was not truthful about her romantic relationship with Smith. Specifically, Smith suggests that the evidence indicates perhaps A.Y. had consumed too much alcohol and then regretted her involvement with him, and he had no way of knowing her thoughts at the time. Smith further contends that there is no corroboration of A.Y.'s version of the events.

{¶51} In support of his argument, Smith states that A.Y. had consumed three large beers; Officer Jameson reported that he smelled a strong odor of alcohol on her breath when he arrived at her home and A.Y. was intoxicated. Smith also contends that various text messages demonstrate that the relationship between Smith and A.Y. was more than casual, including a text where A.Y. informed Smith that her daughters were gone for the evening and she invited him

over for dinner. Smith further indicates that A.Y.'s testimony regarding how long she had known Smith conflicted with what she told the responding officer and the SANE nurse. In particular, Smith contends that A.Y. neglected to inform the responding officer that she had been with Smith earlier in the day, outside of her apartment. Additionally, during her SANE examination, A.Y. informed the nurse that she had met Smith one week prior to the incident, when text messages indicated that they had been communicating as early as January 14.

{¶52} Based upon our review of the evidence, however, we cannot say that the jury lost its way in convicting Smith of sexual battery and kidnapping and created a manifest miscarriage of justice. Regarding A.Y.'s alcohol consumption, the record indicates that A.Y. was honest about having consumed alcohol on January 31. She advised the 911 police dispatcher, the responding officer, and the SANE nurse that she had been drinking. Although her testimony varies somewhat concerning the number of ounces in each beer, A.Y. consistently testified that she consumed two beers while waiting for Smith at Lyle's house and one beer while at her home. A.Y. also testified that she was "tipsy," not drunk, and she remembered everything that happened that afternoon. Further, there is no evidence that the alcohol A.Y. consumed impaired her ability to accurately recall details of the incident.

{¶53} Regarding her relationship with Smith, A.Y. testified that she was not interested in Smith romantically; rather, they were friends, who "talked on the phone back and forth basically if he wanted to come by and visit * * * we can hang out." Although A.Y. admitted that she invited Smith over for dinner the evening her daughters would be gone, she testified that her "god-brother," Lyle, was also expected for dinner. A.Y. further explained that the reason she invited Smith for dinner that evening was because "we don't want to drink and smoke cigarettes [and] all that around my daughters" due to her small apartment and the girls' young ages.

{¶54} Regarding the length of time A.Y. had known Smith, we note that Officer Jameson testified that although A.Y. did not advise him that she had been with Smith earlier in the day, the officer did not question A.Y. regarding her whereabouts prior to the incident. Further, Officer Jameson testified that he learned from A.Y. that Smith was helping her move, and he had assumed that because she was moving, she "was obviously going to move from point A to point B" and that she had been at a different location earlier in the day.

{¶55} Additionally, where A.Y. may have told the SANE nurse that she had only known Smith for one week, it is reasonable for a victim of a sexual assault undergoing a SANE examination to have difficulty recalling an exact date she and the alleged attacker first met. This is especially true under the circumstances in this case, where A.Y. was mistaken by only ten days.

{¶56} Here, A.Y. testified that Smith moved her to the bedroom against her will, lowered her onto the floor by her wrists, unbuttoned and removed her pants from one leg, placed the full weight of his body upon her, and proceeded to have sexual intercourse with her as she cried and repeatedly told him "no." To the extent Smith claims there is no corroboration of A.Y.'s version of the incident, none is required. *See State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 53.

{¶57} Nevertheless, A.Y. reported the assault almost immediately, underwent a SANE examination, and told her son and her god-brother, Lyle, what had happened. In addition, the 911 tape indicated that A.Y. was crying throughout the phone call; Officer Jameson testified that upon his arrival on the scene, A.Y. was sobbing so much that he could not understand her; and the SANE nurse reported that A.Y. began to cry and sob during her examination.

**{¶58}** In light of the above, we do not find that this is the exceptional case in which the evidence weighs heavily against the conviction.   Smith's fifth assignment of error is overruled.

**{¶59}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.   The defendant's conviction having been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

TIM McCORMACK, JUDGE

MARY EILEEN KILBANE, P.J., and
ANITA LASTER MAYS, J., CONCUR