[Cite as *State v. Dranse*, 2023-Ohio-1475.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 111627 |
| v. | : | |
| DENNIS DRANSE, JR., | : | |
| Defendant-Appellant. | : | |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART AND REMANDED IN PART
**RELEASED AND JOURNALIZED:** May 4, 2023

---

Criminal Appeal from the Cuyahoga County Common Pleas Court
Case No. CR-21-662183-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Chadwick P. Cleveland, Assistant Prosecuting Attorney, *for appellee.*

Bennett Legal, LLC, and Mark S. Bennett, *for appellant.*

ANITA LASTER MAYS, A.J.:

{¶ 1} Defendant-appellant Dennis Dranse, Jr. ("Dranse") appeals his convictions and asks this court to reverse his convictions and/or vacate and remand the matter to the trial court for resentencing. We affirm in part, and remand in part

to the sentencing court to state, on the record, the required findings for consecutive sentences on Counts 1 and 2.

## I.     Procedural History

{¶ 2} On August 17, 2021, a grand jury indicted Dranse on an 11-count indictment. On March 3, 2022, the state filed a motion in limine to exclude the testimony of a potential defense witness, Andrew Phillips ("Phillips"). Phillips wrote a letter dated January 28, 2022, claiming that Ashlee Silver ("Silver") admitted to him that she was the one who shot at the police, not Dranse. The state argued that Phillips's testimony would be inadmissible hearsay because Silver's statement did not fit into any of the exceptions. On March 9, 2022, Dranse filed a brief in opposition to the state's motion in limine. On March 15, 2022, the trial court conducted a hearing on the state's motion in limine and advised the parties that a ruling would be issued during the course of the trial.

{¶ 3} After a jury trial, Dranse was found guilty of Counts 1 and 2, attempted aggravated murder of a peace officer, first-degree felonies, in violation of R.C. 2923.02 and 2903.01(E)(2); Counts 3 and 4, felonious assault of a peace officer, first-degree felonies, in violation of R.C. 2903.11(A)(2); Counts 5 and 6, failure to comply, third-degree felonies, in violation of R.C. 2921.331(B); Count 7, tampering with evidence, a third-degree felony, in violation of R.C. 2921.12(A)(1); Count 8, discharge of a firearm on or near prohibited premises, a third-degree felony, in violation of R.C. 2923.162(A)(3); Count 10, improperly handling firearms in a motor

vehicle, a fourth-degree felony, in violation of R.C. 2923.16(B); and Count 11, obstructing official business, a fifth-degree felony, in violation of R.C. 2921.31(A). Dranse executed a voluntary waiver of his right to a jury trial as to Count 9, having weapons while under disability. At the conclusion of trial, the trial court found Dranse guilty of Count 9, having weapons while under disability, a third-degree felony, in violation of R.C. 2923.13(A)(2).

{¶ 4} Counts 1 through 6 and Count 8 included one-, three-, five- and seven-year firearm specifications. The trial court sentenced Dranse to a total of 21 years in prison. Specifically, Dranse was sentenced to three to four and one-half years on Count 1, plus the seven-year firearm specification; Count 2, three years plus the seven-year firearm specification; Counts 3 and 4 merged into Counts 1 and 2, respectively for the purpose of sentencing; one-year consecutive sentence on Count 5 with the one-, three-, five- and seven-year firearm specifications merging into the seven-year specification on Count 1; Count 6 merging into Count 5; one-year on Count 7; and three years on Count 8 with all firearm specifications merging into Count 1, seven-year specification; one-year on Counts 9 and 10; and 12 months on Count 11. The trial court ordered Counts 1, 2, and 5 to run consecutive to each other and concurrent to all other counts. The seven-year firearm specifications in Counts 1 and 2 are to run consecutive to each other for a total of 21 years.

{¶ 5} The trial court advised Dranse that under Reagan Tokes Law, he would be subject to an additional period of incarceration of up to 18 months on

Count 1 if Dranse violated any terms and conditions imposed by the Bureau of Prison during his period of incarceration. Dranse's trial counsel objected to the imposition of Reagan Tokes Law arguing that it was unconstitutional.

## II. Facts

{¶ 6} On July 16, 2021, two Parma police officers observed a white Chevy Tahoe stopped at a red light. The officers observed that the Tahoe's windows were heavily tinted and did not have a license plate. The officers attempted to initiate a traffic stop, but the Tahoe began increasing its speed rather than stopping. As the officers chased the Tahoe, the driver brandished a firearm out of the driver-side window and fired four rounds at the officers. As they pursued the Tahoe, the driver fired two to three additional shots at the officers as the speed of the Tahoe approached 110 m.p.h. The chase lasted for approximately 40 minutes, and the Tahoe was eventually stopped when it ran over spike strips placed on the roadway by officers of the Madison Police Department.

{¶ 7} After the Tahoe stopped, two occupants fled the Tahoe and ran into the woods. The officers chased the occupants and located Silver and Dranse in the woods. Before locating the two in the woods, officers observed Silver exiting the Tahoe from the passenger-side with Dranse following behind her out of the same passenger-side front door. Silver and Dranse were arrested and transported to Parma city jail. Investigators collected evidence from the crime scene, specifically the area where the driver of the Tahoe shot at the officers. Investigators found .45-

caliber shell casings, .45 magazines, grips for a Glock handgun and a plastic case for a Glock handgun. They also observed a bullet hole in the driver's side of the Tahoe angled towards the rear and downward. A firearm was not recovered.

{¶ 8} On April 13, 2022, Dranse's trial commenced, and Silver was called to testify on behalf of the state. Silver testified that on the evening of July 16, 2021, Dranse was driving the Tahoe, and she was riding in the front-passenger seat. Silver testified that Dranse was the one who fired the gun at the officers, although she did not see the gun being fired, and she never switched seats with Dranse. Silver stated that she observed the Glock in Dranse's waistband that same night.

{¶ 9} Dranse's trial counsel cross-examined Silver and inquired as to whether Silver confessed to Phillips that she was the one who fired the gun at the officers. Silver denied making those confessions. Dranse's trial counsel did not admit Phillips's letter into evidence or ask Silver about the letter at that time.

{¶ 10} Detective Jeff Wells ("Det. Wells"), the lead investigating officer of the case, testified that during his interview with Dranse, on the morning of July 17, 2021, Dranse told him he was driving the Tahoe, and that the police were trying to stop him. Dranse also told Det. Wells that he did not own a gun. However, Det. Wells testified that Dranse's statement was inconsistent with a jail call between Dranse and Phillips, that was recorded on July 16, 2021. During that call, Dranse told Phillips that he was going to come down to the jail and show Phillips his Glock.

{¶ 11} Det. Wells also testified as to a second jail call between Dranse and his son. The call was played for the jury, and Det. Wells testified as to the contents of the call. Dranse's son told Dranse that he should have just pulled over, and Dranse responded that he did not think the police had anything because they did not have the gun. Specifically, he stated, "If they don't have a gun, what do they have?" (Tr. 614.)

{¶ 12} At the end of Det. Wells's testimony, the state rested its case against Dranse. The trial court denied Dranse's Rule 29 motion for acquittal. Dranse's trial counsel then indicated that he wanted to call Phillips to testify. The state renewed its motion in limine to exclude Phillips's testimony. In response, Dranse's trial counsel stated: "Your Honor, there needs to be some corroboration and there is corroboration here because Ashlee Silver said without any ambiguity we got rid of the gun. That's corroboration." (Tr. 671.)

{¶ 13} The trial court asked: "How specifically does it corroborate Ashlee's purported statement that she fired the gun?" *Id.* Trial counsel responded that it does not, but the jury should decide between the credibility of Silver and Phillips. The trial court ruled that "under evidence 804(B)(3) that that statement purportedly made to Mr. Phillips by Ms. Silver is not admissible because there is not sufficient corroborating circumstances clearly indicating the trustworthiness of the statement." (Tr. 672.)

{¶ 14} Dranse did not call any other witnesses, the state and defense closed. Dranse was found guilty of all counts and timely filed this appeal, assigning three errors for our review:

1. The court erred when it granted the state's motion in limine and did not allow the defendant to call Andrew Phillips to testify as to Ashlee Silver's statement against interest that she in fact fired a gun at police officers;

2. The record does not support the findings that consecutive sentences were appropriate; and

3. The Reagan Tokes sentencing scheme violated appellant's rights under the United States Constitution applied to the state of Ohio through the Fourteenth Amendment and the Ohio Constitution as it denies appellant due process of law; violates the Sixth Amendment right to a jury trial; violates the separation of powers doctrine; does not provide fair warning of the dictates of the statute to ordinary citizens; and the statute conferred too much authority to the Ohio Department of Rehabilitation and Correction.

## III.  Motion in Limine

### A.  Standard of Review

{¶ 15} "[W]e review a trial court's ruling on a motion in limine for abuse of discretion." *Perrin v. Perrin*, 8th Dist. Cuyahoga No. 109376, 2021-Ohio-2581, ¶ 26. "An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority." *State v. Thomas*, 8th Dist. Cuyahoga No. 111425, 2023-Ohio-302, ¶ 40, citing *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. "In other words, '[a] court abuses its discretion when a legal rule entrusts a decision

to a judge's discretion and the judge's exercise of that discretion is outside of the legally permissible range of choices.'" *Id.*, quoting *State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, 172 N.E.3d 75, ¶ 19.

### B. Law and Analysis

{¶ 16} In Dranse's first assignment of error, he argues that the trial court erred in granting the state's motion in limine by not allowing Phillips to testify as to Silver's statement against interest that she fired a gun at the police officers. Dranse argued that the state focused on the strength of its evidence establishing him as the shooter and less on lack of corroboration. Dranse further stated that the state's argument did not focus on the probative value of Phillips's testimony regarding Silver's confession. "[A] 'motion in limine' is a motion 'which is usually made before or after the beginning of a jury trial for a protective order against prejudicial questions and statements * * * to avoid injection into trial of matters which are irrelevant, inadmissible and prejudicial.'" (Citation omitted.) *Berea v. Timm*, 8th Dist. Cuyahoga No. 107740, 2019-Ohio-2573, ¶ 19, quoting *State v. Grubb*, 28 Ohio St.3d 199, 200, 503 N.E.2d 142 (1986).

{¶ 17} In the state's motion in limine, it argued that Phillips may not testify at trial to any alleged statements made by Silver because such testimony would be inadmissible hearsay. The state also argued that the only Evid.R. 804 exception potentially relevant is Evid.R. 804(B)(3), which states:

A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

{¶ 18} "'Circumstantial indicia of corroboration may include proof that the declarant repeated his story often and consistently, or evidence that the statement was made to someone who would respond *officially*, *e.g.*, a law enforcement officer.'" (Emphasis sic.) (Citation omitted.) *State v. Akers*, 11th Dist. Portage No. 95-P-0073, 1997 Ohio App. LEXIS 1354, 25 (Apr. 4, 1997), quoting *State v. Long*, 2d Dist. Clark No. 1893, 1984 Ohio App. LEXIS 10526, 21 (July 12, 1984). "'The corroboration requirement is derived from a long-standing recognition that third-party out-of-court confessions are inherently subject to fabrication and abuse.'" *Id.,* quoting Weissenberger, *Ohio Evidence*, Section 804.53, at 508 (1997).

{¶ 19} Phillips, in a January 28, 2022 letter, states that Silver, in August 2021, confessed to him that she was the one driving the Tahoe and shooting at the police on the night of July 16, 2021. However, the record does not reveal any corroborating evidence regarding Phillips's claims. In fact, Dranse, in a recorded interview with Det. Wells, the lead investigating officer, states that he was the one driving the Tahoe. (Tr. 638.) Dranse also stated that he was driving 120 m.p.h. The officers who were chasing the Tahoe testified that the driver of the Tahoe was

shooting at them. In a recorded jail call, Dranse told Phillips that he was going to show him his Glock. The record reveals that the police found Glock gun magazines, Glock shell casings, a Glock gun case, and Glock handgun grips all in the Tahoe.

{¶ 20} The evidence and the testimony presented at trial are consistent with Dranse being the driver and shooter. Silver testified and was cross-examined about her potential conversation with Phillips, which she denied. Thus, Phillips's testimony regarding Silver's uncorroborated confession is inadmissible hearsay. *See State v. Doumbas*, 8th Dist. Cuyahoga No. 100777, 2015-Ohio-3026, ¶ 61 (Extrinsic evidence of a prior inconsistent statement not offered solely for the purpose of impeachment is not admissible under Evid.R. 613(B).).

{¶ 21} Dranse also argues that the trial court focused more on the strength of the prosecution's case, and not on the probative value of Phillips's testimony. Dranse's argument is misplaced. The trial court only needs to weigh the probative value of the evidence when there is a concern of unfair prejudice. "Evid.R. 403(A) provides for the mandatory exclusion of relevant evidence if 'its probative value is substantially outweighed by the danger of unfair prejudice * * *.'" *State v. Smith*, 8th Dist. Cuyahoga No. 103483, 2016-Ohio-5512, ¶ 28, quoting *State v. Milam*, 8th Dist. Cuyahoga No. 86268, 2006-Ohio-4742, ¶ 66. The trial court did not rule on the probative value of Phillips's testimony, but rather the trial court ruled that "under [Evid.R.] 804(B)(3) that the statement purportedly made to Mr. Phillips by

Ms. Silver is not admissible because there is not sufficient corroborating circumstances clearly indicating the trustworthiness of the statement." (Tr. 672.)

{¶ 22} Therefore, Dranse's first assignment of error is overruled.

## IV. Consecutive Sentences

### A. Standard of Review

{¶ 23} "R.C. 2953.08(G)(2) provides that when reviewing felony sentences, a reviewing court may overturn the imposition of consecutive sentences where the court 'clearly and convincingly' finds that (1) 'the record does not support the sentencing court's findings under R.C. 2929.14(C)(4),' or (2) 'the sentence is otherwise contrary to law.'" *State v. Saxon*, 8th Dist. Cuyahoga No. 111493, 2023-Ohio-306, ¶ 18.

> "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."

*State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 24} In *State v. Gwynne*, Slip Opinion No. 2022-Ohio-4607, ¶ 18-23, the Ohio Supreme Court clarified how consecutive sentences should be reviewed, and held that "consecutive-sentence findings are not simply threshold findings that,

once made, permit any amount of consecutively stacked individual sentences." The court also held that "appellate review of consecutive sentences under R.C. 2953.08(G)(2) does not require appellate courts to defer to the sentencing court's findings in any manner." *Id.* at ¶ 23.

{¶ 25} The court in *Gwynne* explained:

[T]he appellate standard of review under R.C. 2953.08(G)(2) is not whether the trial court abused its discretion when it imposed consecutive sentences and intermediate deference to the trial court's findings is not required. An appellate court's review of the record and findings is de novo with the ultimate inquiry being whether it clearly and convincingly finds — in other words, has a firm conviction or belief — that the evidence in the record does not support the consecutive-sentence findings that the trial court made. To reiterate, R.C. 2953.08(G)(2)'s clear-and-convincing standard does not permit — much less require or expect — an appellate court to modify or vacate an order of consecutive sentences only when it is unequivocally certain that the record does not support the findings. It requires that the appellate court vacate or modify the order if, upon review of the record, the court is left with a firm belief or conviction that the findings are not supported by the evidence.

When reviewing the record under the clear-and-convincing standard, the first core requirement is that there be some evidentiary support in the record for the consecutive-sentence findings that the trial court made. If after reviewing the applicable aspects of the record and what, if any, evidence it contains, the appellate court finds that there is no evidence in the record to support the consecutive sentence findings, then the appellate court must reverse the order of consecutive sentences. A record that is devoid of evidence simply cannot support the findings required by R.C. 2929.14(C)(4); there must be an evidentiary basis upon which these findings rest.

The second requirement is that whatever evidentiary basis there is, that it be adequate to fully support the trial court's consecutive-sentence findings. This requires the appellate court to focus on both the quantity and quality of the evidence in the record that either

supports or contradicts the consecutive-sentence findings. An appellate court may not, for example, presume that because the record contains some evidence relevant to and not inconsistent with the consecutive-sentence findings, that this evidence is enough to fully support the findings. As stated above, R.C. 2953.08(G)(2) explicitly rejects this type of deference to a trial court's consecutive-sentence findings. Instead, a de novo standard of review applies to whether the evidence in the record supports the findings that were made. Under this standard, the appellate court is, in fact, authorized to substitute its judgment for the trial court's judgment if the appellate court has a firm conviction or belief, after reviewing the entire record, that the evidence does not support the specific findings made by the trial court to impose consecutive sentences, which includes the number of consecutive terms and the aggregate sentence that results.

*Gwynne* at ¶ 27-29.

## B. Law and Analysis

{¶ 26} In Dranse's second assignment of error, he contends that the record does not support the findings that consecutive sentences were appropriate. Dranse submits that the trial court specifically erred in sentencing him on Counts 1, 2, and 5 consecutively without making consecutive-sentence findings. Under Ohio law, sentences are presumed to run concurrently unless the trial court makes the required findings under R.C. 2929.14(C)(4). *State v. Reindl*, 8th Dist. Cuyahoga Nos. 109806, 109807, and 109808, 2021-Ohio-2586, ¶ 14; *State v. Gohagan*, 8th Dist. Cuyahoga No. 107948, 2019-Ohio-4070, ¶ 28.

{¶ 27} The state argues that under R.C. 2941.25(B), the trial court was not required to make consecutive-sentence findings as Counts 1 and 2 were not subject to merger because the incidents involved separate victims. Additionally, the state

argues that Count 5 was statutorily required to be run consecutively to any other imposed prison terms.

{¶ 28} R.C. 2941.25(B) states:

Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 29} There is no argument that under R.C. 2941.25(B) that it was proper for Dranse to be convicted on Counts 1 and 2, and that the counts were not subject to merger. However, to impose consecutive sentences, the trial court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) at least one of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶ 30} At sentencing, the trial court stated:

The Court finds this case very troubling on a number of different levels. It's difficult to understand what would be going on in the mind of Mr. Dranse that he felt that discharging a weapon while being chased by law enforcement was a good idea.

Particularly on, I won't go into detail on, but the extraordinary extensive criminal record from going back to Cuyahoga County Juvenile Court in 1991.

If there is nothing further, it will be the sentence of this Court, relative to Count 1 of the indictment, the defendant will serve three years at the Lorain Correctional Institute prior to and consecutive to that term. He will serve a seven-year sentence on the gun specification on Count 2. He will, likewise, serve a three-year period of incarceration at LCI, plus a seven-year sentence on Count 2.

Counts 1 and 2 will run consecutive to each other for an aggregate of 20 years.

Relative to Count 5, it will be the sentence of this Court that the defendant serve a one-year consecutive sentence on Count 5.

Count 6, as indicated, is merged with Count 5.

On Count 8, it will be the Count 7, it will be — I'm sorry.

On Count 5, one-year.

And on Count 7, it will be a one-year concurrent sentence to those sentences previously imposed.

And Count 8, it will be a sentence of three years, plus a seven-year spec for an aggregate of ten years. And that sentence will run concurrent to the sentences just imposed.

In Count 9, it will be a concurrent one-year sentence. This is an aggregate sentence of 21 years.

(Tr. 819-820.)

**{¶ 31}** We determine that the trial court did not make the necessary findings in accordance with R.C. 2929.14(C)(4). Nor were the findings incorporated in the journal entry.

**{¶ 32}** Although Counts 1 and 2 did not merge for the purpose of sentencing, the trial court still has the discretion to consider whether the prison terms should be served consecutively or concurrently. *See State v. Jones*, 8th Dist. Cuyahoga No. 110742, 2023-Ohio-380, ¶ 192. "In order to impose consecutive terms of imprisonment, a trial court must both make the statutory findings mandated for consecutive sentences under R.C. 2929.14(C)(4) at the sentencing hearing and incorporate those findings into its sentencing entry." *State v. Wells*, 8th Dist. Cuyahoga No. 105723, 2017-Ohio-8738, ¶ 3. "Under R.C. 2953.08(G)(1), if the trial court does not make the findings required by R.C. 2929.14, the appellate court is directed to 'remand the case to the sentencing court to state, on the record, the required findings.'" *Id.* at ¶ 6.

**{¶ 33}** Now we must consider Dranse's argument that the trial court failed to make consecutive-sentencing findings as it relates to Count 5. The state argues that the trial court was not required to make the findings because it was statutorily required to be run consecutively to any other prison terms. In Count 5, Dranse was

convicted of failure to comply in violation of R.C. 2921.331(B). R.C. 2921.331(D) states:

> If an offender is sentenced pursuant to division (C)(4) or (5) of this section for a violation of division (B) of this section, and if the offender is sentenced to a prison term for that violation, the offender shall serve the prison term consecutively to any other prison term or mandatory prison term imposed upon the offender.

{¶ 34} The state is correct in its assertion that it is statutorily required for the trial court to run Dranse's sentence on Count 5 consecutively to any other prison term. "[I]f a trial judge exercises his or her discretion to impose consecutive sentences, he or she must make the consecutive-sentence findings set out in R.C. 2929.14(C)(4), and those findings must be made at the sentencing hearing and incorporated into the sentencing entry." *State v. Sergent*, 148 Ohio St.3d 94, 2016-Ohio-2696, 69 N.E.3d 627, ¶ 17, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 23. However, in Dranse's case, the trial judge did not have the authority to exercise his discretion to impose consecutive sentences because they were statutorily required.

> This court has previously concluded that R.C. 2921.331(D) requires a sentencing court to follow that statute's dictates independently from R.C. 2929.14(E)(4) and, as such, the trial court need not state its reasons for imposing consecutive sentences because R.C. 2921.331(D) mandates as much. *See State v. Dudenas*, Cuyahoga Nos. 81461 and 81774, 2003-Ohio-1000, at ¶ 22-24.

*State v. Hicks*, 8th Dist. Cuyahoga No. 82574, 2003-Ohio-6902, ¶ 20.

{¶ 35} Therefore, Dranse's second assignment of error is overruled with regard to the sentencing on Count 5. However, as it relates to the consecutive sentencing on Counts 1 and 2, Dranse's assignment of error is sustained. We remand the case to the sentencing court to make, on the record, the required findings.

## V. Reagan Tokes Law

{¶ 36} In Dranse's third assignment of error, he argues that the trial court violated his constitutional rights when it sentenced him in accordance with the Reagan Tokes Law. At sentencing, the trial court stated:

> Finally, Mr. Dranse, you are advised that under the Reagan Tokes [Law], you will be subject to an additional period of incarceration of up to 18 months on each [of] Counts 1 and 2 if you were to violate any terms and conditions imposed by the Bureau of Prisons during your period of incarceration.

(Tr. 821.) Dranse's counsel objected to the trial court's sentence stating that it was unconstitutional. *Id.*

{¶ 37} Dranse's assignment of error is overruled pursuant to this court's en banc decision in *State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.).

{¶ 38} Judgment affirmed in part, and remanded in part.

It is ordered that appellee and appellant split costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, ADMINISTRATIVE JUDGE

LISA B. FORBES, J., and
EMANUELLA D. GROVES, J., CONCUR


N.B. Judge Anita Laster Mays is constrained to apply *Delvallie's* en banc decision. For a full explanation of her analysis, *see State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.) (Laster Mays, J., concurring in part and dissenting in part).

Judge Lisa B. Forbes is constrained to apply *Delvallie*. For a full explanation, *see State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.) (Forbes, J., dissenting).

Judge Emanuella D. Groves concurred with the opinions of Judge Lisa B. Forbes (dissenting) and Judge Anita Laster Mays (concurring in part and dissenting in part) in *Delvallie* and would have found the Reagan Tokes Law unconstitutional.